HOSEA KINGMAN & another, administrators, vs. OAKES
S. SOULE.

Plymouth.   January 27, 1881; January 25. — March 30, 1882.

In an action by an administrator upon several promissory notes given for sums of
money lent to the defendant by the intestate, it appeared that the intestate, who
was a partner with S., requested the defendant to sign a certain note as surety
for them, saying that, if he would do so, " the defendant should never. lose
anything by so doing, and that he should not be called upon for the money
which the intestate had and should thereafter put into the defendant's hands
until the defendant should be relieved from all responsibility on said note, and
that the intestate would protect him from all loss on account of said note."
Some of the sums of money expressed by the defendant's notes were lent to
him before, and some of them after, this promise; and, relying upon it, the de-
fendant signed, as surety for the intestate and S., a note at a certain bank upon
which a certain sum was due at the intestate's death.   S. was appointed admin-
istrator of his estate, and, the bank desiring a living surety in place of the in-
testate, S. asked the defendant to sign a new note for the amount due on the
old note, if the intestate's heirs would sign; and said that the defendant would
stand in the same relation as on the old note.   Such a note was made, signed by
S. as principal, and by the defendant and the widow and daughter of the intes-
tate as sureties, and transmitted to the bank.   The presiding judge found that
the amount due on the old note " was paid by S. by said new note."   The new
note was afterwards paid by the defendant, who claimed to set off so much of
the sums lent him by the intestate as would reimburse him for this payment.
*Held*, that such application could not be made.
An administrator cannot bind the estate by a promise that it shall continue liable
to indemnify a surety on a promissory note given by the intestate's partner and
heirs in payment of a former note made by the intestate and his partner and
signed by the surety upon the intestate's promise of indemnity.

CONTRACT, by the administrators *de bonis non* of the estate of
George B. Dunbar, upon five promissory notes signed by the
defendant.   Trial in this court, without a jury, before *Morton*,
J., who ordered judgment for the plaintiffs ; and reported the
case for the determination of the full court.   The facts appear
in the opinion.

The case was argued at the bar in January 1881, and rear-
gued in January 1882.

*R. M. Morse, Jr. & H. L. Harding*, for the defendant.

*H. Kingman*, for the plaintiffs.

DEVENS, J.   The defendant owes the estate of the plaintiffs'
intestate certain notes for sums of money lent to him by the

intestate, against which he seeks to set off a certain sum of money paid by him, as he contends, under such circumstances that the estate of the intestate is liable to reimburse him therefor. *Bachelder* v. *Fiske*, 17 Mass. 464. *Adams* v. *Butts*, 16 Pick. 343.

Dunbar, the intestate, who was a partner with one Southworth, requested the defendant to sign a certain note as surety for them, saying that if he would do so the "defendant should never lose anything by so doing, and that he should not be called upon for the money which Dunbar had and should thereafter put into the defendant's hands until the defendant should be relieved from all responsibility on said note, and that he, Dunbar, would protect him from all loss on account of said note." Some of the sums of money expressed by the notes of the defendant were lent to him before, and some of them after, this promise; and, relying upon it, the defendant signed as surety for Dunbar & Southworth a note for $15,000, at the New Bedford Savings Bank, upon which the sum of $7650 was due at the death of Dunbar. Southworth was appointed the administrator of Dunbar's estate; and, the bank desiring a living surety in place of Dunbar, Southworth asked the "defendant to sign a new note for $7650, if Dunbar's heirs would sign. He also said he, the defendant, would stand in the same relation as on the old note. The defendant then said he would sign if Southworth would get the other names."

Such a note was made, signed by Southworth as principal, and by the defendant and the widow and daughter of the intestate as sureties, and transmitted to the New Bedford Savings Bank. It is found by the judge who presided that "the balance due on said note of $15,000 was paid by said Southworth by said new note for $7650." The new note has now been paid by the defendant, who, after deducting certain dividends received by him from the estate of Southworth, who died insolvent, claims to apply so much of the moneys lent him by Dunbar as is needed to reimburse him for the amount paid by him on this note.

Although it is found that the original note was paid by Southworth, and thus, as a necessary result, that there was no longer any liability on the part of Dunbar's estate to the bank which

had lent money upon it, the defendant contends that, in determining his rights as against Dunbar's estate, " the court will look into the actual transaction, and will see that the second note in fact gave the bank nothing on account of the original loan, and that the balance due thereon was paid only when the defendant paid it." It is true that no money was received by the bank, but there may be a payment of one note by the delivery and acceptance of another, if this be so intended by the parties, as there may be a payment of one loan by the use of the proceeds of another. Whether the exchange of one form of security for another is intended as a payment, and thus an extinguishment of the original security, is a question of fact, depending in many instances largely on the intent of the parties, which in this case has been settled by the finding made. *Pomroy* v. *Rice*, 16 Pick. 22. *Bryant* v. *Pollard*, 10 Allen, 81. *Tucker* v. *Drake*, 11 Allen, 145.

The bank did not receive in the second note a new security for the original loan. When it received the second note as payment of the first, a new loan was created. It necessarily discharged the estate of Dunbar, which was part of the security of the original loan, and relied upon a new promise made by others by which neither Dunbar nor his estate was bound. The old undertaking on the part of the promisors therein was at an end, even if the new undertaking entered into by the new promisors and such of the old ones who united with them was made for the purpose of terminating it. Suppose at the death of Dunbar a new partner had been brought into the firm by Southworth, for whom the defendant signed a note as surety, and the use made of this had been to pay at the bank the note signed by Dunbar, could it be contended that Dunbar's estate should be still liable to the defendant if the principals failed to pay the new note? Can it make any difference that it was agreed, when the new note was signed, that this should be the use made of it, or that the party at whose request the second note was signed was a party to the first transaction? In either case the original loan is paid. The contract is not the less a new and independent one because, but for the existence of the previous one, it might never have been made. The defendant could have rested, had he so determined, upon the promise of indemnity

from Dunbar in becoming surety for the original loan, but, that being paid, he has no further claim on his estate.

Nor can the defendant say his position is now the same as if he had himself paid the original note, which he might have done, no doubt, by giving his own note, if the bank chose to accept it, or his own note with surety, as well as by payment in cash. *Washburn* v. *Pond*, 2 Allen, 474. The payment was not made by him, but by another person, to whom he consented to lend his credit, and who, upon that and the credit of others, obtained a loan upon which he has become liable. It was for him to determine whether he would accept this new undertaking, but it is on account and because of it that his subsequent liability arose.

The promise of Southworth that the defendant would stand in the same relation as on the old note only meant that the defendant should still occupy the place of surety on the new note, as on the former one. But if it meant anything more, and it was intended by Southworth to promise on behalf of the estate that it should continue bound to indemnify the defendant upon the new note if the liability for the original was discharged, it was a promise quite beyond his authority to make.

The general rule is, that an executor can make no contract which shall bind the estate of his testator by a new promise. If he borrow money for the purposes of the estate, and devote it to the payment of debts due; if he contract for services valuable and important to it, which are rendered, he alone is liable therefor, and it will be for the Probate Court to determine whether he shall be allowed in his accounts compensation for the liability he has incurred. *Luscomb* v. *Ballard*, 5 Gray, 403. To this rule there are but two exceptions, one perhaps rather apparent than real. A count on an *insimul computassent* with the executor may be joined with a count on a promise by the testator. Here the subject matter of the account arises in the lifetime of the testator, and is merely reduced to certainty by the executor, and, although the count may be on the promise of the executor as such, the original liability is that of the testator. *Ashby* v. *Ashby*, 7 B. & C. 444. *Dowse* v. *Coxe*, 3 Bing. 20. *Powell* v. *Graham*, 7 Taunt. 580. *Hapgood* v. *Houghton*, 10

Pick. 154. The estate is also bound for the charges of the funeral incurred by request of the executor, and is held equally liable for them as it would be for necessary supplies furnished the testator in his lifetime. But if a promissory note were given by the executor for these charges, the estate would not be liable upon it. *Hapgood* v. *Houghton, ubi supra.*

If, therefore, the promise is construed as the defendant contends, it is governed by the general rule, and cannot bind the estate. *Judgment affirmed.*