NELS J. NESS *vs.* JAMES M. WOOD and others.

January 31, 1890.

**Mechanic's Lien—Labor and Material under Contract with Four of Five Executors.**—Five persons were the duly appointed and legally qualified executors of the last will and testament of W. F. D., deceased. Two of these executors, E. E. D. and S. A. D., and another person, still a minor, were the devisees named in the will, having the same interests under it, share and share alike, in the property. Pending the settlement of the estate in probate court, four of the executors, one being said devisee, E. E. D., entered into a contract with S., W. and W., the terms and conditions of which fully appear in the opinion of the court, with reference to the alteration and permanent improvement of a building then situate upon certain real property belonging to the estate, and a lease thereof to said S., W. and W. for a period of 10 years. The plaintiff, by virtue of a contract with S., W. and W., performed labor upon, and furnished materials for, the alteration and improvement of said building, was not paid for the same, and in this action demands that the value of said labor and materials be adjudged a specific lien against said real property. *Held,* (1) that such a lien cannot be decreed against the interests of the executor and devisee S. A. D., who refused to become a party to the original contract, or as against the interests of the minor devisee; (2) that as against the interest of the executor and devisee E. E. D., who signed the contract, the amount of the plaintiff's claim should be decreed and adjudged a specific lien, under the terms and provisions of Gen. St. 1878, *c.* 90, subject, of course, to the administration of the estate.

Appeal by plaintiff from an order of the district court for Ramsey county, refusing a new trial after a trial by *Brill,* J., and judgment ordered for defendants. The action was to enforce a mechanic's lien for $2,817.81.

*T. R. Palmer,* for appellant.

*Williams & Goodenow,* for respondent.

COLLINS, J. In May, 1887, William F. Davidson died testate, having devised all of his property to his widow, Sarah A. Davidson, and his children, Edward E. and Sallie M. Davidson, share and share alike. The latter child is not yet of full age. In the will the widow,

Sarah A., the son, Edward E. Davidson, P. S. Davidson, J. H. Davidson, and F. L. Johnson were named as executors, and were given full power to sell and convey the real property. The will was probated, and the persons above named duly qualified as such executors. Among other property, Mr. Davidson died seised of a tract of land in the city of St. Paul upon which there was a structure known as the "Exposition Rink." On August 17, 1887, an agreement in writing was entered into by and between Edward E. Davidson, J. H. Davidson, P. S. Davidson, and F. L. Johnson, "executors of the last will and testament of Wm. F. Davidson, deceased," of the first part, and J. M. Wood, J. E. Sackett, and E. W. Wiggins of the second part, wherein it was recited that the parties of the first part had contracted and agreed to make a lease of the real property before mentioned to those of the second, to extend from date until July 1, 1897, for a rental and on terms thereinafter stated. The agreement then provided that the parties of the second part might immediately enter upon and occupy the premises, except such part as was then in possession of tenants; that, in conformity with plans to be first submitted to and approved by the parties of the first part, those of the second might put improvements on the premises to cost not less than $30,000; that no work should be done or changes made without the consent and approval of said parties of the first part; and that at the end of the lease all improvements which were permanent fixtures, or had become a part of the building, should remain upon, revert to, and become a part of, the property. The rental should be at the rate of $11,000 per annum for the first five years, commencing November 1, 1887. This rental was based upon a valuation of the property, as it then stood. At the expiration of five years, the rental for the second term of five years was to be based on a revaluation of the premises, as they then stood. The building and fixtures were to be insured at all times by the parties of the second part, for not less than $15,000, with loss, if any, payable to the parties of the first part. The lease, in duplicate, was to be deposited in escrow with some person to be agreed upon, but was not to be delivered until all contemplated changes and improvements were made to the satisfaction of the parties of the first

part. Mrs. Davidson, the widow, residing in another state, expressly refused to sign this paper. On the execution of the instrument Sackett, Wiggins, and Wood submitted plans to the parties named in the agreement as of the first part, respondents, which were approved, and work was immediately commenced. It continued until January, 1888, when Sackett, Wiggins, and Wood, having become insolvent, were compelled to abandon the project. A part only of the improvements had been completed, and no lease had been made. One instalment of rent, $1,100 was paid to the executors November 1, 1887. When the work ceased, the executors took possession of the premises. The plaintiff herein furnished materials, and performed work and labor upon the premises, in accordance with the approved plans, under a contract with Sackett, Wiggins, and Wood. Thereafter he made and filed an affidavit for a lien in due form, and this action was brought to foreclose the lien. The substance of the findings of fact, as made by the court, sitting without a jury, are stated above. Judgment was ordered for the defendants, and from an order refusing a new trial plaintiff appeals.

1. By the terms of the will there was conferred upon the executors a bare power to sell and convey; nothing more. Under it they had no authority to enter into the agreement which has led to this litigation; nor were the executors empowered by statute to make such a contract, and the estate could not be held liable upon it, directly or indirectly. Gen. St. 1878, c. 52, § 6; *Smith* v. *Park*, 31 Minn. 70, (16 N. W. Rep. 490.) The contract being invalid as against the estate, the subsequent payment of one instalment of the yearly rental by Sackett, Wiggins, and Wood, and its acceptance by the executors, could not render it effectual or binding. The general rule is well established that an executor or administrator cannot bind the estate he represents by any *new* contract he may make for it. It is held that if he borrows money for the purposes of the estate, and devotes it to the payment of debts due, or if he contracts for services which are actually rendered, valuable and important to the estate, or if he executes a deed in his representative capacity, containing covenants which fail, he is individually liable, and judgment must be against him personally. The estate is not bound. Among the many cases

which sustain the foregoing are *Austin* v. *Munro,* 47 N. Y. 360; *Schmittler* v. *Simon,* 101 N. Y. 554, (5 N. E. Rep. 452;) *Sumner* v. *Williams,* 8 Mass. 162; *Kingman* v. *Soule,* 132 Mass. 285; *Steele* v. *Steele,* 64 Ala. 438; *McFarlin* v. *Stinson,* 56 Ga. 396; *Florsheim* v. *Holt,* 32 La. Ann. 133; *Adams* v. *Adams,* 16 Vt. 228. A few excepceptions may be found to the rule so broadly stated, but there are none whereby the Davidson estate could be held upon the contract before mentioned. It is apparent, therefore, that whatever effect the admission of the testimony tending to show that the contract was signed by some of the respondents as executors, and not by them as individuals, may have had, or whether it was material or admissible for any purpose, it could not and did not alter the legal effect of the instrument. If, in law, it was the personal contract of the executors who signed, it has so remained, with all of its liabilities, notwithstanding the testimony complained of. But in this action we are not called upon to declare what personal obligations, if any, were assumed by such of the respondents as joined in its execution. The sole inquiry upon this feature of the case is as to its effect upon the undivided interest held in the property by E. E. Davidson, devisee under the will, and one of the parties of the first part to the contract.

2. Conceding, without deciding, that plaintiff would not be entitled to a lien upon the premises in question had Sackett, Wiggins, and Wood actually held a lease when he performed the labor and furnished the materials specified in his complaint, (see *Boteler* v. *Espen,* 99 Pa. St. 313; *Johnson* v. *Dewey,* 36 Cal. 623; *Cornell* v. *Barney,* 94 N. Y. 394; *Conant* v. *Brackett,* 112 Mass. 18,) we are clearly of the opinion that the improvements contemplated and provided for in this contract must be distinguished from those which might have been placed upon the property under a lease, and also that we have here a different state of facts from those considered in *Hill* v. *Gill,* 40 Minn. 441, (42 N. W. Rep. 294.) The contract, so far as E. E. Davidson is concerned, must be construed as authorizing Sackett, Wiggins, and Wood to charge his interest in the land for such debts as might be incurred in remodelling and improving the building. As a part of the consideration for the proposed lease, it was stipulated that improvements, to cost not less than $30,000, should be put upon the land before the

lease should be delivered, and that these improvements should remain at the expiration of the term, as part of the realty. The building, when so improved, was to be kept insured for at least $15,000, payable, in case of loss, to the parties of the first part. The contract being silent on the matter of future taxes, the payment thereof, including such as might be incurred by reason of the proposed improvements, would fall upon the owners, and not on Sackett, Wiggins, and Wood. For the first five years the rental ($11,000 per annum) was based upon a valuation of the property as it stood when the contract was executed; and for the remainder of the specified term (the second five years) the rental was to be based upon a valuation in 1892, and to be increased in a sum equal to 10 per centum of the increased valuation of the property, as it then stood, over and above the amount fixed as the valuation for the first five years. By this method of determining the rental in 1892, the improvements would be considered and included in the valuation, and their value would serve in part as a basis for increased rent. By the terms of the contract, Sackett, Wiggins, and Wood were required to reconstruct a building and make other improvements upon real estate owned by the devisees named in the will of the deceased; to advance the money needed; to make the contemplated changes and alterations at their own expense in the first instance, but ultimately these improvements were at the expense of the owners, who were to pay for the same by the execution and delivery of the 10-year lease, with the use and occupation of the premises as improved and benefited. Whatever was placed thereon became a part of the realty,—a fixture; and whether Sackett, Wiggins, and Wood earned the right to a lease or obtained one, or not, the improvements were to be of direct, immediate, and permanent benefit to the estate and its owners. They were not completed so as to be beneficial, but, in principle, this can make no difference. The contract was not an "improvement lease" strictly, but had all of the essential and main characteristics of a "building contract," by which Sackett, Wiggins, and Wood were required, as well as authorized, to remodel and improve the building for the benefit of the land. It was therefore entirely consistent with the right or authority to have the work done on the credit of the building and the land. When the ten-

ant, or the proposed tenant, contracts with the owner of the land to add to or to repair, compensation to be made by the owner, either in money or in the use and occupation of the premises, the contract falls in the category of the ordinary one to build, and the party adding to, or repairing, or constructing the building is doing it for the owner, and at his ultimate expense.

It has been suggested that as E. E. Davidson acted with others, and not alone, as an executor only, (as all parties supposed,) and without an intent to incur individual liability of any description; that, at most, his share in the property is but an undivided one-third; and that as yet no part thereof has been assigned under the terms of the will,—a mechanic's lien upon his interest should not be decreed. It is manifestly very unfortunate for him that he has incurred a liability of any kind unintentionally, but the fact that he has done so cannot change the character of the contract made, nor release him from its obligations. They were fixed and settled through judicial determinations long before this transaction. The rights of all these parties were known to them at the outset, in contemplation of the law, and cannot be disregarded. Had the parties of the second part to this contract fulfilled it, as agreed upon, by the expenditure of a large sum of money, and those of the first part had then been unable to deliver a lease, as stipulated, (and it is difficult to see how such a lease could have been obtained,) such inability would have been no defence to the demands of Sackett, Wiggins, and Wood for performance, or compensation for a breach of the contract; and had an action been necessary for the recovery of compensation by way of damages, an answer that all of the parties to the instrument in question supposed that those of the first part had full authority to act, and were properly acting, for the estate, that no one intended to assume a personal or individual liability, would have been, under the unbroken line of authorities before cited, equally as futile. It is also immaterial that a formal assignment of the respective interests of the devisees under the will has not yet been made. Subject to the administration of the estate in the ordinary course of probate, the shares of these devisees had descended to and vested in each, long before the contract in question was entered into.

A new trial must be had, in which, with a full understanding of the plaintiff's rights, and the real issues between the parties, the amount plaintiff is entitled to have decreed a lien on the interest of E. E. Davidson in this property can be easily ascertained.

Order reversed as to the defendant E. E. Davidson; affirmed as to the other defendants.

### NOTE.

JOHN MARTIN LUMBER CO. *vs.* JAMES M. WOOD *et al.*

*Warren H. Mead,* for appellant.

### EDWARD SISKRON *vs.* SAME.

*Pierce, Arctander & Nickell,* for appellant.

### CHARLES JAGGAR *vs.* SAME.

*Lawler & Durment,* for appellant.

*Williams & Goodenow,* for respondents in all the cases.

Each of these cases was an appeal by plaintiff from an order by *Brill,* J., refusing a new trial. They presented the same facts and legal questions involved in the foregoing case of *Ness* v. *Wood,* were argued with it, and decided at the same time and in the same manner.