Nels J. Ness *vs.* Edward E. Davidson *et al.*

Argued April 14, 1892.   Decided May 5, 1892.

**Mechanic's Lien—Follows the Proceeds of the Sale of the Building.**
Certain real estate was specifically devised, but subject to a discretionary power in the executors to sell the same, in which event the proceeds were to go to the devisee. Before the power of sale was exercised the estate which the devisee acquired under the will became charged with a mechanic's lien, and an action was instituted to enforce the same. The executors then sold the land in the exercise of their power, with the effect (as was considered in a former decision) to discharge the lien from the land. *Held:* (1) That in such action to foreclose the mechanic's lien the court, in accordance with a general principle of equity, should treat the lien, when it was discharged from the land by the sale under a power paramount to the lien, as being transferred to the proceeds of the sale in the hands of the devisee. (2) The power of sale being discretionary, the doctrine of equitable conversion did not operate to constructively convert the real estate into money as of the time of the death of the testator, so as to prevent the mechanic's lien from thus attaching and being thus enforced.

Appeal by defendant Edward E. Davidson from a judgment of the District Court, Ramsey county, *Egan,* J., entered January 19, 1892.

This was an action to foreclose a mechanic's lien. The plaintiff, Nels J. Ness, between November 11, 1887, and January 28, 1888, furnished materials and built stone walls upon lots three, (3,) four, (4,) nine, (9,) and ten, (10,) in block twenty-one, (21,) St. Paul Proper. This stone work was required to repair and remodel the building thereon commonly known as "Exposition Rink." Plaintiff's bill amounted to $4,442.81, on which he was paid $1,625, and

he filed a statement of lien for the balance. The successive controversies that arose in the action all grew out of the circumstances affecting the title to these lots.

William F. Davidson, of St. Paul, died, testate, May 26, 1887, seised in fee of this property. His will was duly proved and allowed in the Probate Court on June 23, 1887, and was as follows:

WILL.

I, William F. Davidson, of St. Paul, Minnesota, being of sound mind and memory, do make, publish, and declare this my last will and testament, in manner following, viz.:

First. I direct that all my just debts be paid.

Second. I give, bequeath, and devise all the rest, residue, and remainder of my property of every name and nature, and wheresoever situated, to my wife, Sarah A. Davidson, and my children, Edward E. Davidson and Sallie M. Davidson, share and share alike; this provision for my wife to be in lieu of dower or other legal rights in and to my property.

Third. I nominate and appoint Sarah A. Davidson, my wife, Edward E. Davidson, my son, P. S. Davidson, my brother, F. L. Johnson, of St. Louis, and James H. Davidson, of St. Paul, Minnesota, executors of this my last will and testament; and I hereby authorize and fully empower them, or the survivor or successors of them, to sell and convey to any person or persons, and upon such terms as to them may seem advisable, any real estate that may come into their possession or control under this will, and to give proper deeds of conveyance thereof; and I also authorize them to sell and dispose of any personal property that may be in their possession or control under this will, and direct that no bond for the faithful discharge of their duties as executors be required of the executors nominated by me aforesaid.

In testimony whereof, I have hereunto set my hand and seal, this 25th day of May, A. D. 1887.          WM. F. DAVIDSON.     [Seal.]

The daughter named in the will was a minor. All the executors named in the will accepted the trust and entered upon the discharge

of their duty. On August 17, 1887, all the executors except the widow made a contract, under seal, with James M. Wood, Jacob E. Sackett, and Enoch W. Wiggins, whereby these three men agreed to make certain improvements and alterations in the building on the lots, costing not less than $30,000, and, in consideration thereof and of certain rents, were to have a lease of the premises for ten years. The widow refused to join in the contract. These persons employed the plaintiff, Nels J. Ness, to build the stone walls above mentioned. They became insolvent in January, 1888, and abandoned the work and the contract.

This court held on the first appeal in this action that a lien could not be enforced against the interest of the widow or the daughter, but might be against the interest of the son, as he was a party to the contract. *Ness* v. *Wood*, 42 Minn. 427. Meantime the executors, on January 2, 1889, under the power in the will, contracted to sell one of the lots to Thomas Lowry, and on January 26, 1889, contracted to sell him the others, and on March 28, 1889, made a third contract with Lowry superseding the two previous ones, and on May 1, 1889, all the executors made and delivered to Lowry a deed of the lots for $180,000, of which sum he paid down $60,000, and gave his three notes for the residue, secured by mortgage on the real estate. Of the money paid down, Edward E. Davidson received under the will $17,000 as his distributive share after payment of certain debts of the testator and expenses of administration.

The order refusing a new trial having been reversed in this court as to the defendant Edward E. Davidson, the action was remitted to the District Court for further proceedings. It was then dismissed as to all the executors and devisees except Edward E. Davidson. On leave obtained under 1878 G. S. ch. 66, § 128, a supplemental answer was interposed, setting out the facts occurring since the former answer, and making Lowry a defendant in the action. The cause was again tried, and findings filed, and judgment ordered that an undivided third of the property devised to Edward E. Davidson be sold to pay plaintiff's claim. He moved for a new trial, and, being denied, appealed to this court, where it was held that the deed to Lowry, under the power given the executors by the will, conveyed

the property free from the liens created thereon by the devisees after the death of the testator, and reversed the order, thereby granting a new trial. *Ness* v. *Davidson,* 45 Minn. 424.

The plaintiff then obtained leave, and filed a supplemental complaint, setting out the sale to Lowry and the payment of $17,000 of the price to Edward E. Davidson, and stating that the Davidson estate had been fully administered, and other facts which occurred pending the action, and praying that plaintiff's claim be adjudged a lien on the interest of Edward E. Davidson in the property and after the sale to Lowry on the proceeds of the sale, and particularly on the $17,000 that he received from the proceeds; that he be adjudged to pay plaintiff's lien out of it. The third trial was had October 22, 1891. Findings were made and filed, and judgment entered for the plaintiff substantially as prayed in the supplemental complaint. From that judgment this appeal was taken.

*Williams, Goodenow & Stanton* and *Eller & How,* for appellant.

The plaintiff, having no rights except those given him by the statute as a subcontractor and material man, with a lien extending, by the operation of that statute, only to an undivided conditional estate in the land, has his lien upon such estate destroyed by the happening of the condition subject to which it existed, and now, by supplemental complaint, seeks to transfer and fasten the lien so destroyed upon the personal property coming to the former owner of the conditional estate in lieu thereof, changing the action from a statutory one to foreclose a lien upon real estate to a proceeding in equity for the enforcement of a trust; and this in a case where there was never any personal liability on the part of the defendant for the debt secured by the lien, and where the lien upon the land is destroyed through no wrongful act of any one, but solely through the valid execution of a lawful power that was paramount to the interest of the defendant in the land, and consequently to the lien sought to be enforced.

The right to a mechanic's lien upon real property by one who occupies the position of subcontractor or material man is a purely statutory right, and the remedy given therefor a purely statutory remedy.

Being created by the statute, the lien exists only so far as the statute provides. *Toledo Novelty Works* v. *Bernheimer*, 8 Minn. 188, (Gil. 92;) *Freeman* v. *Carson*, 27 Minn. 516; *Burbank* v. *Wright*, 44 Minn. 544; *King* v. *Smith*, 42 Minn. 286; Phil. Mech. Liens, §§ 9, 15, 18, 45.

Being a purely statutory right, with a statutory remedy for its enforcement, neither the lien nor the remedy therefor can be extended by the application of equitable principles resting upon a different foundation, and which are properly applicable only to rights of a different character.

The right to a lien itself could not become clothed with any additional equities, or furnish a basis for the application of so-called equitable principles, merely from the fact that it was authorized to be enforced by the same sort of procedure as that provided for the foreclosure of mortgage liens. The foreclosure of mortgages, while coming within a class of cases over which equity has always assumed jurisdiction, is, in this State, regulated by statute, and the section last above quoted in regard to liens merely extends to that class of liens the forms of procedure provided by statute in the case of mortgages. It is the mere statutory adoption for a particular purpose of a particular statutory remedy already existing; the right to a lien being by the statute confined to the interest of the owner in the building improved and the land upon which the same is situate. *King* v. *Smith*, 42 Minn. 286; *Buchan* v. *Sumner*, 2 Barb. Ch. 165.

So far as this defendant and his property are concerned, this right was a mere *jus ad rem*, and the remedy, so far as any question here involved is concerned, is controlled by the principles governing ordinary proceedings *in rem*. Phil. Mech. Liens, § 305. In that class of actions it is a fundamental principle that with the destruction of the *res*, its passage beyond the jurisdiction of the court, the remedy is at an end. In such proceedings, whether strictly *in rem* or merely *quasi in rem*, the property is the thing proceeded against, and, with destruction of that, nothing is left against which a judgment can operate.

The sale that was made was not of defendant's interest in the land, but of the estate that the testator had therein at the time of

his death, and might properly be made for the purposes of conferring the benefactions of the testator in the form of personal property rather than real estate. It was only to the interest of defendant in the specific land, and not what might come to him in case of a sale under the power, that the lien attached, and the fact that under the will he, as legatee or devisee, received the whole or a portion of the proceeds of the sale, or the benefits resulting from their application to the removing of liens on other real estate, furnishes no ground for the extension of plaintiff's rights beyond the qualified interest in the specific land to which it originally attached.

There may be, and undoubtedly are, cases where the rights of a lienholder would not be destroyed although there was an actual change in the condition of the property to which the lien has attached. Those cases all rest on well-settled principles of equity jurisprudence, and will be found to be confined to two classes, to neither of which does the present case belong. The two classes of cases where equity has declared that a conversion of the property or a change in its condition should not operate to affect the rights of a prior owner or lien claimant thereon, are:

1st. A class of constructive trusts where, through some fraud, actual or constructive, or as the result of some wrong, a conversion has been worked, and the proceeds can be traced or identified in their new or changed form.

2d. Cases of execution or judicial sale, or conversions under some statutory power.

It is not claimed that plaintiff's case comes within the first class.

The second class of cases is as far removed from the present as is the first. In the second class are sales by judicial process or under statutory authority, where, the conversion being contrary to individual right, and by operation of law for the accomplishment of a special purpose, they go no further than is necessary for that purpose.

If upon the sale of land a surplus is left after the purpose of the sale is performed, it is to be treated as near as may be as though no conversion had been made. To this class belong sales upon foreclosure, and executions and conversions made in statu-

tory proceedings. In the case of sales under a power in trust to convert lands like that contained in the Davidson will, a complete execution works an absolute conversion of the entire estate, leaving no surplus to which the original condition can attach.

The plaintiff's lien upon the land was attached to a subordinate interest. The conversion of the entire estate is made through exercise of a power in the testator's will that is paramount to that interest. The money that is paid to Edward E. Davidson goes to him not merely because of his former ownership of the subordinate estate, but because his ancestor saw fit to confer this benefaction in that form. It was, in effect, a bequest of money coming from a source paramount to the lien. Upon the sale being made, the proceeds became personal property in the hands of the executors, which they were bound to account for to the Probate Court the same as for other personal property; for the power of sale was given to them as executors, and could be exercised only while the estate was in course of administration, and they occupied the position of executors.

*T. R. Palmer*, for respondent.

If, when plaintiff is attempting to enforce his lien upon the property charged, the property disappears, and in its place, and as a substitute for it, the owner or person who originally pledged the property for the payment of the lien claim receives the proceeds of its sale, equity will come to plaintiff's aid, and charge the fund so received with the payment of the lien claim. It will treat the fund precisely as if it were real estate. The statutory proceedings end where all the requirements have been complied with, and equity takes it up from there, and accomplishes the rest, by the application of all the equitable rules which are applied to preserve or secure any other right. *Finlayson* v. *Crooks*, 47 Minn. 74; *Elgin Lumber Co.* v. *Langman*, 23 Ill. App. 250; *Third Nat. Bank* v. *Stillwater Gas Co.*, 36 Minn. 75; *McLeod* v. *Evans*, 66 Wis. 401.

This remedy would seem to be founded in the highest equity, and its existence has been recognized in analogous cases. *Kinnier* v. *Rogers*, 42 N. Y. 531; *Reed* v. *Underhill*, 12 Barb. 113; *Vernon* v. *Vernon*, 7 Lans. 492; *Drake* v. *Paige*, 52 Hun, 301; *Ackerman* v.

*Gorton,* 67 N. Y. 63; 2 Story, Eq. Jur. 304, 611; Phil. Mech. Liens, § 196 *et seq.; Hammer* v. *Johnson,* 44 Ill. 192.

There is nothing in the claim by counsel for appellant that, if this power in the will were an imperative power to sell at a certain time, the conversion would date back to the death of the testator. The contrary is laid down in 1 Jarm. Wills, 585, and note, and in *Savage* v. *Burnham,* 17 N. Y. 561.

DICKINSON, J. Two former appeals in this action are reported in 42 Minn. 427, (44 N. W. Rep. 313,) *sub nom. Ness* v. *Wood,* and 45 Minn. 424, (48 N. W. Rep. 10.) On the first appeal it was decided that the claim of the plaintiff was chargeable as a mechanic's lien upon the interest of this appellant, Edward E. Davidson, in the land devised. On the second appeal, it appearing that the executors had then exercised the power to sell conferred upon them by the will of the testator, it was considered that by the sale and conveyance the land was transferred to the purchaser free from any such lien, for the reason that the devisees could not incumber the estate so as to obstruct or defeat the execution of the power. The effect of the two decisions was that the estate of the appellant in the land was chargeable with the mechanic's lien, but that such estate was liable to be divested by the exercise of the power of sale conferred by the will, in which case he would become entitled under the will to the proceeds of the sale in lieu of the land itself; that his estate in the land was so divested, with the effect also to discharge the lien from the land.

After the remanding of the case to the district court, a supplemental complaint was allowed and filed, setting up the fact of the sale of the land, and that the appellant had received a portion of the proceeds of the sale, and it was prayed that the appellant be adjudged to hold such proceeds, to the extent of the plaintiff's lien claim, in trust for its satisfaction; and after a retrial of the case, upon issues joined, equitable relief of that nature was granted. This is an appeal from the judgment.

The power of the court to enforce payment of the plaintiff's claim out of the proceeds of the sale of the land is denied by the appellant upon three grounds, it being contended (1) that the plaintiff's right

to charge the property of the appellant with a lien, being purely statutory, cannot be extended by the application of general prin-ciples of equity, so as to bind or affect other property than the land and structures which the statute declares to be subject to such liens; (2) that, even if equitable principles are applicable, this case is not within the principle invoked in support of the judgment; that the cases in which a charge or claim resting upon specific property will be, upon equitable grounds, transferred to or imposed upon other property which has been substituted for that originally charged, are confined to two classes, neither of which includes this case, viz. (*a*) cases of constructive trust arising from a conversion or substitution of property through some wrong or fraud, actual or constructive, and (*b*) cases of execution or judicial sales, or where there has been a conversion of the property under a statutory power; and (3) that the fund arising from the execution of the power of sale conferred by the testator is not chargeable with this lien, because, as is contended, under the doctrine of equitable conversion, the actual conversion of the property by the sale related back, in legal contemplation, to the time of the death of the testator, and hence the property devised should be treated as having been personal property from the time of the death of the testator, passing as such under the will, as of the time when the will became effectual, and never subject to a mechanic's lien, which is chargeable only upon interests in real property. These propositions have been supported by able arguments, but we do not yield our assent to them.

Without reviewing the ground covered by our former decisions, the correctness of which is not questioned, we enter upon the con-sideration of the case with the premise that the appellant had an estate in the land devised, although it was liable to be divested by the execution of the power of sale, in which case the proceeds of the land were to go to him as a substitute for the land itself. The further premise is to be accepted that the appellant's estate, while it existed, was actually charged with the plaintiff's mechanic's lien. The lien had been created under a contract which he had executed. In contemplation of law, the improvement went on, and the lien was imposed with his consent. His estate was as effectually charged as

it would have been if he had executed a mortgage upon it to secure the debt of some other person. If such had been the case, and if his estate had thereafter been terminated, and the mortgage lien upon the land extinguished, by the execution of the power of sale conferred by the will, the proceeds of the sale going to him under the will in place of the estate, it would seem that in equity the substituted proceeds should be regarded as a trust fund in place of the original security. As the mechanic's lien is, in contemplation of law, created by his authority or consent, the case does not seem in this particular to be distinguishable in principle from that just supposed. The appellant's classification of cases, in which equity will thus transfer a lien or charge from the specific property upon which it originally rested to that which becomes a substitute for it, recognizes that this will be done where, by a sale under legal or judicial process or in the execution of a statutory power, the lien is divested, as where land is sold under a senior lien, and a price received in excess of what is necessary to satisfy it. The right of those having junior liens to have the surplus applied to the satisfaction of their claims is not questioned, and is not a matter of doubt. *Brown* v. *Crookston Agricultural Ass'n*, 34 Minn. 545, (26 N. W. Rep. 907.) It would be difficult to assign any satisfactory reason for such a limitation of this equitable doctrine as would exclude this case from its operation, if equitable principles are to be recognized and applied in the enforcement of statutory mechanics' liens. It can make no difference in principle whether the estate charged with the lien is sold under a paramount lien or under legal or judicial process, or, as in this case, under a testamentary power paramount to the lien, and the execution of which is effectual to discharge the lien from the land, and to convert the estate into money, for the benefit of the person whose estate is sold.

The mechanic's lien having attached to the real estate while it was vested in the appellant, and having been discharged only by a sale, which was, in effect, a conversion of the property thus changed into money,—a substitution of the proceeds of the sale of the land for the land itself,—for the benefit of the person who owned that estate, it is considered that the substituted fund in the

hands of such person, the appellant, should be charged with the payment of the debt, for the payment of which he; in legal con- templation, had allowed his estate in the land to be charged. The power of the court to make the lien effectual, by thus treating the substituted proceeds of the real property as subject to the liability which had been imposed on the property itself, has been asserted in *Werth* v. *Werth*, 2 Rawle, 151; *Burt* v. *Kurtz*, 5 Rawle, 246; *Years- ley* v. *Flanigen*, 22 Pa. St. 489; *Robson & Co.'s Appeal*, 62 Pa. St. 405: *Wells* v. *Canton Co.*, 3 Md. 234, 242; *Livingston* v. *Mildrum*, 19 N. Y. 440; *Ackerman* v. *Gorton*, 67 N. Y. 63; *Gaty* v. *Casey*, 15 Ill. 189; *Ellett* v. *Tyler*, 41 Ill. 449; and see 2 Jones, Mortg. (4th Ed.) § 1687; Phil. Mech. Liens, §§ 196–198. It is true that in some of these cases the question of the applicability of the equitable rule was not really involved in the case decided. From the fact that mechanics' liens are authorized only by statute, it does not follow that equitable principles are inapplicable in proceedings to make the lien effectual; and this is a matter which pertains largely to the remedy for enforcing the lien and making it effectual. The stat- ute, so far as its provisions bear upon this subject, supports the con- clusion above expressed. It is enacted that the holder of the lien may proceed to obtain judgment, and enforce the same in the same man- ner as in actions for the foreclosure of mortgages upon real estate. If the plaintiff's lien had been created by a mortgage executed by the appellant on his estate, and this had been an action to fore- close the mortgage, we see no good reason to doubt that the court might treat the proceeds of the sale of the land, under the power conferred by the will, as a substitute for the land mortgaged, and transfer to such proceedings the liability previously resting upon the appellant's estate in the land. If the court, in the exercise of its general equity power, would have given such relief in an action to foreclose the mortgage, the very terms of the statute justify the court in doing the same in this equitable action.

The third point of the appellant, founded on the doctrine of equi- table conversion, is not tenable. The power to sell conferred by the will was, as we hold, clearly discretionary in the donees of the power, and no imperative duty was imposed on them. Hence there was

no conversion of the real into personal property, even constructively, until the power was actually executed. The conversion should not be deemed to have been made as of the time of the death of the testator, but only as of the time when the power was exercised by a sale of the real estate. *In re Ibbitson's Estate,* L. R. 7 Eq. 226; *Edwards* v. *West,* 7 Ch. Div. 858; *Stoner* v. *Zimmerman,* 21 Pa. St. 394; *Keller* v. *Harper,* 64 Md. 74, (1 Atl. Rep. 65;) *Kouvalinka* v. *Geibel,* 40 N. J. Eq. 443, 446, (3 Atl. Rep. 260;) 3 Pom. Eq. Jur. §§ 1160, 1162, 1163; 1 Wats. Comp. Eq. 111; Adams, Eq. 135. See notes to *Fletcher* v. *Ashburner,* 1 White & T. Lead. Cas. Eq. 1118. See, also, the opinion of Lord Eldon in *Townley* v. *Bedwell,* 14 Ves. 591. Before the conversion was effected, before the situation came to be such that the equitable principle that what ought to have been done will be deemed to have been done became applicable, the plaintiff's lien upon the real estate vested in the appellant had been created. It was decided on a former appeal in this action that the power of sale enabled the grantees of the power to sell the estate free from the lien. But the doctrine of equitable conversion, which extends no further than is necessary for the accomplishment of the ends to which it is directed, does not forbid that a court of equity should, in accordance with a recognized principle of equity, transfer the lien discharged from the real estate to the proceeds of such estate in the hands of the appellant.

Judgment affirmed.

(Opinion published 52 N. W. Rep. 46.)