### KELLEY v. KELLEY et al.

#### (Circuit Court, S. D. Ohio, W. D. January 20, 1898.)

#### No. 4,693.

1. EXECUTORS DE SON TORT—CONTRACTS—PERSONAL LIABILITY.
   The sons and sole heirs at law of a banker, who died intestate, continued the business of the bank after his death, and prior to the appointment of an administrator; and during such time certificates of deposit were issued, and deposits received, in the name of the bank. Some of the certificates were in renewal of former certificates canceled, and some covered deposits made both before and after the father's death. *Held*, that the sons had no power to bind the estate by any new contracts, though the business was continued for its benefit, and that they became individually liable on the obligations so created.

2. SAME—EFFECT OF PROVING CLAIM AGAINST ESTATE.
   Where persons assuming control of the property and business of a decedent created obligations which were not binding upon the estate, but were upon them individually, they were not released from liability by the fact that such obligations were presented and allowed as claims against the estate.

This was an action by Josh Kelley against Lindsey Kelley, Ironton A. Kelley, and Joshua F. Austin, to charge them as partners in the conduct of the business of the Exchange Bank of W. D. Kelley after the death of said W. D. Kelley.

Frank F. Oldham, R. B. Miller, and Julius L. Anderson, for plaintiff.

A. C. Thompson, for defendant J. F. Austin.

W. A. Hutchins and John Hamilton, for other defendants.

SAGE, District Judge. The petition is for the recovery of the amount of two certificates of deposit, dated, respectively, April 1, 1893, and April 12, 1893, and for a balance due upon deposits made by plaintiff in the bank of the defendants; the total amount being $4,026.43, with interest, as claimed in the petition. W. D. Kelley, whose name appears in the title of the bank, died intestate on the 2d day of October, 1891.

The answer of the defendants Lindsey Kelley and Ironton A. Kelley sets up: That the Exchange Bank of W. D. Kelley was established in the city of Ironton in 1854 by their father, William D. Kelley.

That it received money on deposit, for which certificates, payable at specified times, and with specified rates of interest, were issued. The principal part of the money thus received was used by W. D. Kelley in his various other branches of business, but a small part thereof was loaned in the ordinary way to other persons. These loans, however, were merely incidental. He invested in the bank the sum of $32,000 in money. Shortly after his death, $25,000 additional was put into the bank, out of the means provided for that purpose by him before his death. He carried on the bank until the time of his death, October 2, 1891. At that time he was the owner of a large amount of real and personal property, and had always been regarded as solvent, and abundantly able to pay all his liabilities and have left a large surplus. Since his death, and especially during the financial panic beginning in 1892, stocks held by him, and other property of which he was the owner when he died, have depreciated in value, "yet even at present prices his estate is solvent, as shown by the appraised value thereof recently made by the appraisers under proper administration proceedings." There survived him his widow, Sarah A. Kelley, and the defendants Lindsey Kelley and Ironton A. Kelley, his sole heirs at law. The widow, who died shortly after the death of her husband, without having used so much of the estate as the law would have given her, made no claim for dower. No part of the estate was ever set apart for her use. None of the defendants ever had any interest in the banking business carried on by W. D. Kelley. An administrator of his estate was appointed on the 10th day of June, 1893. After the death of Kelley, and until the appointment of the administrator, the answer avers that the banking business was continued "by and on behalf of" his estate. Interest was paid to depositors to the amount of over $12,000. Certain certificates of deposit were paid in full, and others were renewed. New deposits of small amounts were received, for which certificates were given; and the business generally was continued in the same name and in the same manner as in the lifetime of W. D. Kelley, except that its continued prosecution was upon the basis of gradually paying the debts of the estate, and winding up its affairs. "All this was done with the full knowledge and consent of these answering defendants (and of their mother, during her lifetime), as the sole heirs of the estate of William D. Kelley, and thereby subjecting and rendering liable the entire estate, both real and personal, of the said Kelley, to the payment of both old and new liabilities, including the part of the estate not specially embarked in said banking business, as well as the amount of money actually invested therein, and free from any supposed right or interest said heirs might have in any of the property of said estate that might or could be asserted by them as against any of said liabilities, either old or new."

It is further averred that the creditors of the bank who were such at the time of the death of said Kelley, as well as those who afterwards became such, "including the plaintiff in this suit, with full knowledge of the death of said Kelley, voluntarily continued to deal with it as though said Kelley had been in full life, looking alone to his estate for the payment of their respective claims."

The answer then sets up: That the defendant Joshua F. Austin had been for many years prior to the death of said Kelley his clerk and bookkeeper at said bank. That he was familiar with the business, and fully competent to manage and conduct it, and that Kelley, shortly prior to his death, specially requested him to continue in charge of the business after his death, the same as before, and assist the defendants in gradually settling and closing it up. After his death his said heirs joined in said request, on behalf of his estate; and thereupon Austin continued in charge of the business, as bookkeeper, and managed the same as he had done before; acting, however, under the authority, advice, and direction of these answering defendants, as the heirs of William D. Kelley. And that the business was so continued and carried on in the name of the Exchange Bank of W. D. Kelley, in the interest of, and on behalf of, his estate, and not otherwise. That the plaintiff and all other creditors so dealt with it. That none of the defendants ever acquired any interest in it, or carried it on in their behalf, as co-partners or otherwise, but for and on behalf of said estate, with the knowledge and consent of the plaintiff, and of other creditors of W. D. Kelley. That the continued prosecution of the business did not result in loss or injury to said estate, or the creditors thereof. None of its property or assets has been lost or misapplied, but all of it remains intact in the hands of the administrator of the estate, except what was applied to paying debts. In the process of managing and settling the banking business as aforesaid, the liabilities of the bank were reduced to the extent of over $40,000, of which amount defendants contributed out of their own private means over $9,000, the balance coming from the assets of said estate; all other debts of said Kelley, amounting to about $16,000, having been paid by these answering defendants, excepting a debt of $50,000, which was abundantly secured by a pledge of property, and by the individual indorsement of these answering defendants.

The defendants further answer that the certificates of deposit sued upon were filled out by their co-defendant, Joshua F. Austin, who, "acting for and on behalf of said estate as aforesaid," signed the name, "Exchange Bank, by A," thereto. Each certificate upon its face purported to be, and was, upon the Exchange Bank of W. D. Kelley, and the plaintiff received the same as an obligation against the estate of said Kelley, and not otherwise.

The defendants further aver that the certificate of deposit for $1,250, in the first cause of action mentioned, was given in renewal of a former one for a like amount issued by said Exchange Bank on the 5th day of April, 1887, long prior to the death of William D. Kelley, for money at that time deposited in said bank, and for no other consideration. The certificate of deposit for $2,500 set forth in the second cause of action, it is averred, was given for part of the balance due plaintiff from said Exchange Bank on the 1st of April, 1893, of a running account kept by said bank of money deposited and checks paid, which account commenced years before the death of William D. Kelley, and was from time to time balanced on the books of said bank. On October 2, 1891,—the date

of the death of said William D. Kelley,—the amount due the plaintiff was $1,407.70.

For answer to the third cause of action, the defendants admit that the balance claimed by the plaintiff is correctly stated, but say that it arises from the running account referred to above, and is the balance of deposit account made after the death of William D. Kelley, with the same understanding as to the relations of the defendants to the estate, and the carrying on of the business, as is hereinbefore set forth.

The defendant Joshua F. Austin denies that he was a partner with the defendants, or that he ever, in his own behalf, or in connection with his co-defendants, executed or delivered to plaintiff the certificates of deposit mentioned in the petition, or either of them, or received deposits, or rendered to the plaintiff an account of deposits, as alleged in the petition. He further denies that he ever had any interest in the business, either before or after the death of William D. Kelley, or any connection therewith, other than as clerk and bookkeeper acting under the employment, and by the direction, of others.

Plaintiff, by reply, puts in issue each and every material averment of new matter by the defendants.

There is no evidence of any contract or arrangement such as is set up by the defendants, and binding upon the estate. There was no one authorized to so bind the estate. W. D. Kelley died intestate. No administrator of his estate was appointed until June, 1893,—long after the defendants had taken charge of the bank, and entered upon the conduct of its business. No administrator would have had authority, on behalf of the estate, to enter upon such an arrangement as pleaded. An executor, even, would be powerless to bind any one but himself by such an arrangement, unless specially directed and empowered by the will of his decedent. In Childs v. Monins, 2 Brod. & B. 460, two executors gave a promissory note to the plaintiff, in the following words: "As executors of the late T. T., we severally and jointly promise to pay to N. O. the sum of £200, on demand, with lawful interest for the same." The court held them personally liable, upon the ground that "the promise, from the circumstance of interest being added [as it was in each of the certificates of deposit in this case], necessarily imported a payment at a future day, and an executor promising to pay a debt at a future day makes it his own."

The principle upo which this ruling is based is well stated in Austin v. Munro, 47 N. Y.. at page 366, as follows: "An executor may disburse and use the funds of the estate for purposes authorized by law, but may not bind the estate by an executory contract, and thus create a liability not founded upon a contract or obligation of the testator."

Counsel for defendants, admitting the general rule as stated, claim that the facts in this case bring it within exceptions recognized in the following cases: In De Valengin's Adm'rs v. Duffy, 14 Pet. 290, 291, where it was held that whatever property or money is lawfully recovered or received by the executor or administrator

after the death of his testator or intestate, in virtue of his representative character, he holds as assets of the estate, and is liable therefor, in such representative character, to the party who has a good title thereto. In that case there was no question that the money received by the administrator was money due the estate of the intestate. The case, therefore, does not apply. For here it is denied that the estate had anything to do with the business from which plaintiff's claim arose.

In Wall v. Kellogg's Ex'rs, 16 N. Y. 385, it was held that executors, who, under a power of sale, conveyed land of which their testator was in equity a mere trustee, were liable, as executors, to the person having the equitable title to such land, for the damages sustained by him, to the extent of the purchase money received by them. The court held that the estate, having had the benefit of the consideration money received on the sale, was equitably chargeable with the amount so received. This case establishes no exception of benefit to the defendants.

Howard v. Powers, 6 Ohio, 92, raised only the question of misjoinder where there was a count upon indebtedness and promise by the administrator, as such, joined with one upon an indebtedness and promise of the intestate. The court was of opinion that the administrator had no ground to object against a recovery of him in his representative character; that the judgment should have been against him in his individual character.

The holding in Arbuckle v. Tracy, 15 Ohio, 432,—that if notes be delivered to an executor to indemnify the estate against a liability, where the testator was a surety only, such notes, and the money collected on them, are not the property of the estate, and the estate is not liable for the misconduct of such executor in respect to such notes and money, but is a trustee for the person delivering the notes, and he alone is responsible for a faithful application of the money collected,—states a proposition not in any sense an exception to the general rule above quoted.

Conger v. Atwood, 28 Ohio St. 134, is also cited. There the administrator had collected rents, to which the widow was entitled under a statutory allowance, and appropriated them to the payment of debts due from his intestate. The court held that she might elect to charge him either in his personal or representative character, and that, in an action against him in his representative character, he could not defeat a recovery on the ground that he was personally liable therefor. I am unable to see that this applies as an exception. Nor does Thomas v. Moore, 52 Ohio St. 200, 39 N. E. 803, in which the rule stated in Austin v. Munro, 47 N. Y. 360, 366, as hereinbefore quoted, is cited with approval, and it was held that executors and administrators are personally liable for the services of attorneys by them employed, and their contracts therefor do not bind the estate, although the services are rendered for the benefit of the estate, and are such as the executor or administrator may properly pay for, and receive credit for the expenditure in the settlement of his accounts. The court cited with approval the rule stated in Woerner, Adm'n, § 515, that "the administrator can be allowed credit only for counsel

fees which he has actually paid, and no more than is reasonable compensation for the services rendered to the estate, no matter what the administrator has actually paid or contracted to pay; and the burden is on him to prove the necessity and value of the services."

This decision is in perfect harmony with the general rule. But it is insisted that the plaintiff is not entitled to recover for the certificate which is the basis of the first cause of action, because it was a renewal by the defendants, after the death of W. D. Kelley, for a certificate issued in his lifetime. The testimony is that a few days after the death of W. D. Kelley the certificate issued by him was brought in by the plaintiff, indorsed by the defendants, interest paid up to October 5, 1891, and there was a renewal for six months. On the 14th of October, 1891, the original certificate was taken up, and the certificate sued upon was given in lieu of it. But that, under the authorities cited, did not create any exception. See Childs v. Monins, cited supra. See, also, Winston v. Young, 52 Minn. 1, 53 N. W. 1015, where it was held that the payment of money, at the request of an executor, to relieve the estate from an incumbrance, does not create a debt allowable and payable, as such, out of the estate. The court in that case said, with reference to the representations made by the executor in connection with his request, that so far as they contained any assurance that, if the plaintiff paid the money, it could be repaid to her as a debt or claim against the estate, it was a representation of law, upon which an action for deceit could not be predicated, for plaintiff is presumed to have known the law as well as defendant. The supreme court of Minnesota, in Ness v. Wood, 42 Minn. 427, 429, 44 N. W. 313, recognized as well established the general rule that an executor or administrator cannot bind the estate he represents by any new contract he may make for it. The court held that if he borrows money for the purposes of the estate, and devotes it to the payment of debts due, or if he contracts for services which are actually rendered, valuable and important to the estate, or if he executes a deed, in his representative capacity, containing covenants which fail, he is individually liable, and judgment must be against him personally; the estate is not bound.

The court of appeals of New York, in Schmittler v. Simon, 101 N. Y. 557, 5 N. E. 452, held that neither executors nor administrators have power to bind the estate represented by them, through an executory contract, having for its object the creation of a new liability, not founded upon the contract or obligation of the testator or intestate. They take the personal property as owners, and have no principal beyond them, for whom they can contract. The title vests in them for the purposes of administration, and they must account, as owners, to the persons ultimately entitled to distribution.

See, also, Kingman v. Soule, 132 Mass. 285, where the court said:

"The general rule is that an executor can make no contract which shall bind the estate of his testator by a new promise. If he borrow money for the purposes of the estate, and devote it to the payment of debts due; if he contract for services, valuable and important to it, which are rendered,— he alone is liable therefor, and it will be for the probate court to determine whether he shall be allowed in his accounts compensation for the liability he has incurred."

In that case the court said that, while the estate was bound for the charges of the funeral incurred by request of the executor, if a promissory note were given by the executor the estate would not be liable upon it.

The supreme court of Alabama in Vanderveer v. Ware, 65 Ala. 607, held that:

"Executors and administrators, even when contracting for matters necessary to the execution of their trusts, do not bind the estate they represent, but are individually liable on such contracts. Suits against them must be personal, and the judgment is de bonis propriis, and not de bonis testatoris."

The court suggests that in such a case a court of equity would, if necessary, undertake to reach any personal assets which might remain unadministered in the hands of a personal representative, and subject them to liability for the claim, but the equitable remedy could not be applied at law.

Also, Judge Daniel, in Fitzhugh's Ex'r v. Fitzhugh, 11 Grat. 300, construing the rule that contracts made with an executor or administrator are personal, and do not bind the estate of the testator or intestate, said:

"The representative has no power to charge the assets in his hands by contracts originating with himself; nor can any other person reach the assets, for claims originating since the death of the decedent, by suit against the representative as such. For such contracts and claims the remedy is against the executor or administrator in his individual capacity."

In the course of his decision he quoted with approval Lovell v. Field, 5 Vt. 218, where the court said:

"The administrator cannot promise to bind the estate for goods furnished for the benefit of the estate. The promise is his own, and he is personally liable. He may make it on the credit of the estate in his hands, but whether he has a right to pay out of the same depends on its receiving the sanction of the probate court."

In Banking Co. v. Morehead, 116 N. C. 410, 21 S. E. 190, it was held that:

"Where an executor executes a note, in his representative capacity, for money borrowed and used for the purpose of paying debts of the testator, the estate is not liable, but the executor is personally liable therefor; and this is so notwithstanding the fact that the lender knows for what purpose the money was borrowed, and how it was used. In such case the executor takes the risk of being reimbursed the amount of the note out of the assets of the estate on the final accounting."

In the case of Farhall v. Farhall, 7 Ch. App. 123, decided in 1871 on appeal from a decision of Vice Chancellor Bacon, the executrix of a testator kept an executorship account with a bank; and, having a power under the will to mortgage the real estate in aid of the personalty, she deposited with the bank the title deeds of part of the testator's real estate as security for the balance. The account was considerably overdrawn by the executrix, and the moneys, to a great extent, misapplied, but without the bank having notice of the misapplication. The security having proved insufficient to pay the balance, the bank applied to prove as creditor against the testator's estate for the difference. The court (Lords Justices James and Melish each filing an opinion) held that the bank was not entitled to prove, for the reason that a person cannot, by contract with an executor,

acquire a right to prove as a creditor against the estate, though the executor has power to give him a lien on specific assets.

These cases apply also to the proposition urged, that the business was carried on for the benefit of the estate, and that the proceeds of the business were applied largely to discharging debts of the estate. It is also contended that the plaintiff agreed with the defendants that the business should be carried on for the benefit of the estate, and that they should not be personally liable. This contention is not borne out by the evidence. There is testimony tending to prove that the plaintiff knew that the business was carried on for the benefit of the estate, and that, after the administrator was appointed, he handed his bank book to him, and, when he saw that the administrator had allowed the balance thereby shown to be due him as a claim against the estate, looked at it, took the book, and went away, without making any objection. This was after the failure of the bank, and after, according to the testimony of the plaintiff, he had made a vain attempt to obtain from the defendants security for what was due him. He testifies that defendant Austin, the administrator, told him the best thing he could do was to bring the claim down, and have it allowed. But the presentation and allowance did not operate to release the defendants. This evidence is not sufficient to establish the contention made for the defendants, nor to relieve them from personal liability. The plaintiff testified that he loaned his money to the defendants; that he supposed they were the Exchange Bank; that he was not doing business with any one else; that they were the ones who wanted to borrow the money; that he knew their father was dead, and that he could not borrow it; that defendant Lindsey Kelley told him that the bank was all theirs, as their father was dead and there were no other heirs, and they considered the bank better than it was, because their property was bound for it, as well as their father's. The defendants are the sole heirs of W. D. Kelley. The title to all his real estate vested in them upon his decease, subject only to the debts of the estate, and the dower of the widow, who died shortly afterwards. They were also beneficially interested in the personal estate, and, after the death of their mother, were the sole beneficiaries, subject to the liabilities of the estate. At the time of the alleged contract or agreement there was no administrator, and the defendants themselves were, with their mother, sole parties in interest. They were therefore all the time necessarily acting on behalf of themselves, and for their own interests. The theory of the defense seems to be that the estate, without any administrator, is to be treated as a legal entity, and as the principal in a transaction conducted entirely between the defendants and the plaintiff,—the defendants, it is claimed, having the right and power to deal on behalf of the estate, as principal, with the plaintiff, so as to realize whatever profits might be made, and avoid liability for whatever losses might be incurred. This theory ignores the fundamental propositions that an agency can be created only by the will of the principal, or by operation of law, and that one who, having no principal, assumes to act as agent, is to be treated as himself the principal. There is, in my opinion, no merit in the defense.

·The judgment will be for the plaintiff against the defendants Lindsey Kelley and Ironton A. Kelley. It is not established that the defendant Joshua F. Austin was a partner. The judgment, as to him, will be in his favor.