MARY DAVENPORT

v.

THOMAS C. KIRKLAND, Exr.

*Filed at Springfield April 2, 1895.*

1. DECREES—*amended at subsequent term by correcting name.* The court may, at a subsequent term, amend its decree by correcting the name of a party, where it clearly appears from the pleadings and from the decree itself that the name given was inserted in place of another by mere clerical error, and no question was raised as to the rights of the person whose name was given.

2. WILLS—*construction—intention controls.* In construing a will all of its provisions are to be considered and the true intention of the testator ascertained therefrom, and such intention, when expressed in or fairly drawn from the language of the will, must control.

3. SAME—*words creating a trust—limitation after fee.* A devise of property to testator's five children, "provided" that the portion willed to three of them named shall be held in trust by the executor to pay the interest to them for life, and in the event of the death of either his portion to descend to his children, and if there be none, to be divided among the testator's surviving children, creates a trust, which is not void as being limited after a fee.

4. SAME—*what language empowers executor to sell realty.* A will giving personal and real property to be held by the executor in trust, and loaned at the highest rate of interest obtainable, makes an equitable conversion of the realty, and empowers the executor to sell and convey it.

5. PERPETUITIES—*language held not to create a perpetuity.* A devise in trust for testator's three children for life, and in the event of the death of any of them the *portion* willed to the deceased child to descend to the children of the deceased, if any, and if not, to be divided among the surviving children, share and share alike, does not create a perpetuity.

6. SAME—*the estate itself, and not a beneficiary right, passes.* The provision in such devise for the children of a deceased child is not a continuation of the trust, the word "portion" describing the estate itself, which is cast upon the children, and not a mere beneficiary interest under the trust.

APPEAL from the Circuit Court of Montgomery county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

J. H. Atterbury, and C. H. Woodward, for appellant:

We are aware that where two clauses in a will are repugnant to each other, the rule of construction is that the last shall govern; but where this rule conflicts with the stronger rule of law that conditions that are repugnant to the estate to which they are annexed are absolutely void, then the latter prevails and the former rule yields. 2 Jarman on Wills, 16; *Friedman* v. *Steiner*, 107 Ill. 125.

If the limitation is to such persons, or upon such events, that it may extend beyond the allowed limit, the devise will be void for remoteness, notwithstanding the fact that it may or does occur within the limits allowed by law. 1 Perry on Trusts, 381; 2 Redfield on Wills, 571.

The court has no power, after the term has passed, to change its judgment actually rendered, or the record thereof, except in a mere matter of form within the Statute of Jeofails; and the striking out of the name of a party is not a matter of form. *Baragwanath* v. *Wilson*, 4 Ill. App. 80; *Goucher* v. *Patterson*, 94 Ill. 525, and cases cited.

Amos Miller, for appellee :

A court has power, upon motion, after a term has passed, to so amend its record as to make it truly set forth the action of the court. *Frink* v. *Schroyer*, 18 Ill. 416; *Mitcheltree* v. *Sparks*, 1 Scam. 122; *Church* v. *English*, 81 Ill. 442.

The first and great object of inquiry in the construction of wills is to determine the intention of the testator, and this intention must be gathered by considering all the words of the will, including all provisos and conditions, and must govern unless inconsistent with the rules of law. *Allen* v. *McFarland*, 150 Ill. 455; *Johnson* v. *Johnson*, 98 id. 564; *Cassern* v. *Kennedy*, 147 id. 660; *Reid* v. *Corrigan*, 143 id. 403; *Lunt* v. *Lunt*, 108 id. 307; *Welsch* v. *Bank*, 94 id. 191; *Rountree* v. *Talbot*, 89 id. 246.

It is a rule of construction that a later clause in a will, when repugnant to a former one, must be considered as intended to modify or abrogate the former. *Jenks* v. *Jackson*, 127 Ill. 341.

The rule is, that equitable conversion may arise, not only from an express and imperative direction in a will, but also from a necessary implication. *Cherry* v. *Greene*, 115 Ill. 596; *Hale* v. *Hale*, 125 id. 399; 6 Am. & Eng. Ency. of Law, 665-683.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This was a bill in chancery, brought by Thomas C. Kirkland, executor of the last will and testament of Robert Hunter, deceased, to obtain a construction of the will of the testator, and particularly of the second clause of the will. Robert Hunter died January 29, 1891, leaving him surviving Elizabeth Hunter, his widow, and his five children, viz., Margaret Hoisington, Mary Davenport, Martha McPhail, James Hunter and Robert Hunter. By the first clause of his will he gave and devised to Elizabeth Hunter, his widow, $8000 in money and certain real estate, to be accepted by her in lieu of dower, and the second clause of the will was as follows :

"*Second*—I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, of every kind and nature, wheresoever situated or of whatsoever consisting, to my five children, Margaret Hoisington, Mary Davenport, Martha McPhail, James Hunter and Robert Hunter, share and share alike : *Provided, however*, and it is hereby directed, that that portion of my estate hereby willed to my three children, Mary Davenport, Martha McPhail and Robert Hunter, shall be held in trust by my executor hereinafter named, to be by him loaned at the highest rate of interest obtainable, payable semi-annually, said portion to be kept loaned by my said executor, and the interest thereon paid to my three children last above mentioned, during their lives, but in the

event of the death of each or any one of said three children, then that portion hereby willed to each shall immediately descend to the child or children of such deceased heir, if there be any; and if any of said last three children above mentioned shall die without issue, then in that case it is my will that the portion of such child or children shall be divided among my surviving children, share and share alike. Finally, I hereby appoint Thomas C. Kirkland my sole executor," etc.

The bill represents that the testator, at the time of his death, was the owner in fee of a considerable amount of real estate, situate partly in Montgomery county and partly in the State of Nebraska, and the claim is made that it was the intention of the testator, as expressed in his will, that the complainant, as his executor, should sell his real estate, except that specifically devised, and that the shares of the proceeds thereof given by the will to Mary Davenport, Martha McPhail and Robert Hunter should be kept loaned at the highest interest possible, the interest to be paid to them; but as the will does not specifically direct the real estate to be sold by the executor, nor authorize the complainant to execute deeds conveying the same, the complainant does not know what construction should be put upon the will, and therefore feels it to be his duty to have a court of chancery construe the same. The widow and five children of the testator are made parties defendant, and the bill prays for a decree directing the complainant as to his duty under the will, and if the intention of the testator was that his real estate should be sold by the complainant as executor, that the court, by its decree, authorize him to do so and to execute deeds conveying the same, and also a general prayer for relief.

The defendants answered and filed their cross-bill, alleging, among other things, that the testator, at the time of his death, was the owner of bank stock, notes

and accounts aggregating nearly $30,000, in addition to the real estate mentioned in the original bill, and that the executor is handling the personal and real estate belonging to the complainants in the cross-bill without any other authority than that contained in the will, and refuses to deliver to Martha McPhail, Mary Davenport and Robert Hunter anything but the interest on their distributive shares, and that he unlawfully usurps the possession of the estate of the testator, claiming the right to do so as trustee under the will, when in fact no such trust exists, and that any pretended trust is illegal and void. The cross-bill prays for a construction of the will, and that the executor deliver to the several complainants in the cross-bill their distributive shares of the estate.

The cross-bill being answered and replications being filed, the cause was heard on pleadings and proofs, and by its decree the court, after reciting the second clause of the will according to its tenor, found and decreed that the legal construction of the will is, that the residuary estate, both personal and real, of the testator therein, devised for the benefit of Martha McPhail, James Hunter and Robert Hunter, is devised to the executor in trust, to be by him converted into money and loaned as directed in the will, the interest thereon to be paid to Martha McPhail, James Hunter and Robert Hunter, and it was adjudged and decreed that the executor be and he was thereby authorized and empowered to sell the portion of the estate so devised to him in trust, wherever situate, and to make good and sufficient deed or deeds of conveyance to the purchaser or purchasers, conveying to him or them all the title and interest that the testator had in such real estate at the time of his death. It was further ordered that the complainant pay the costs made by the original bill, in due course of administration, and that the defendants pay the costs made by the cross-bill.

At the next succeeding term of court the complainant, after giving due notice to all the defendants, entered his motion to re-docket the cause, and for leave to amend the decree by striking out the name of James Hunter wherever it occurred in the decretal order and inserting the name of Mary Davenport therein in lieu thereof; and it appearing to the court, on the hearing of such motion, from the records and files in the cause, that in drafting the decree the name of James Hunter was inserted by a clerical error instead of that of Mary Davenport, the motion was allowed, and the decree was amended accordingly. From this latter order Mary Davenport has appealed to this court.

The first contention made on behalf of the appellant is, that the court had no power, after the term at which the decree was entered had elapsed, to amend the decree by correcting the name of one of the parties therein mentioned. The rule applicable to amendments or alterations of decrees in chancery after the lapse of the term is substantially the same as that prevailing in cases of judgments at law, and is confined to mere clerical errors or matters of form, or to matters which are quite of course. (*Lilly* v. *Shaw*, 59 Ill. 72; *Hurd* v. *Goodrich*, id. 450.) But this rule, as applied both to judgments at law and to decrees in chancery, does not deprive courts of the power, at a subsequent term, to correct matters of mere form in their judgments, or misprisions of their clerks, or the right to correct any mere clerical errors, so as to conform the record to the truth. In short, any amendments permissible under the Statute of Amendments and Jeofails may be proper at a subsequent term, and even after a writ of error has been brought. (*Cook* v. *Wood*, 24 Ill. 295; *Coughran* v. *Gutcheus*, 18 id. 390.) In *Cooley* v. *Scarlett*, 38 Ill. 316, it was held that where a circuit judge had inadvertently signed a decree containing erroneous recitals of the proof, he might correct it at a

subsequent term, on his becoming satisfied that an error in that respect had been committed. And in *Palmer* v. *Harris*, 100 Ill. 276, the court, at a subsequent term, amended the decree, on motion of the complainant, so as to reduce the sum ordered to be paid to him, and such amendment was held to be proper.

In *Frink* v. *Schroyer*, 18 Ill. 416, the names of some of the defendants seem to have been misstated in the judgment, and the court, in holding that such errors were amendable, said : "The parties to the action, and between whom the issue was tried, appear from the declaration and plea, and the misstatement of the surnames of some of these parties defendant in the subsequent record and judgment order is evidently the mere clerical mistake of the officer (the clerk) in entering of record the proceedings and judgment of the court. This is apparent from inspection of the record, and the mistake is amendable by the record itself, at any time, either in the court where the record remains, or in any other court to which the record may be taken by appeal or writ of error. Such is the letter and spirit of our Statute of Jeofails." See, also, *Mitcheltree* v. *Sparks*, 1 Scam. 122, and *Church* v. *English*, 81 Ill. 442.

In the present case it clearly appears from the pleadings, and also from the decree itself, that the name of James Hunter was inserted in the decree in place of that of Mary Davenport by mere clerical error. The only questions raised by the pleadings, or submitted to the court for adjudication, related to the rights of Mary Davenport, Martha McPhail and Robert Hunter under the will of their father, it being claimed, on the one hand, that their shares in their father's estate were devised to the executor in trust, to be by him loaned at interest and the interest only paid to them, and on the other hand, that the trust was invalid, and that these three beneficiaries were therefore entitled to receive their

shares of the estate absolutely and in fee. No question whatever was raised as to the rights of James Hunter. The decree recites that part of the will out of which the controversy arose, and which shows that the rights of Mary Davenport and not those of James Hunter were the subject matter of the litigation. In that part of the decree in which construction is given to the will and the rights of the parties litigant fixed and determined, the two other beneficiaries of the trust are named, but in place of the name of Mary Davenport, the third beneficiary, that of James Hunter, whose rights were not in dispute, is inserted. This is clearly a clerical error, which is amendable under the rule laid down in the cases above cited. It would seem to come clearly within that provision of the Statute of Amendments and Jeofails which provides, in substance, that judgment shall not be arrested, stayed or affected by any mistake in the name of any party or person, when the correct name shall have been once rightly alleged in any of the pleadings or proceedings. Starr & Cur. Stat. 273.

But the proposition chiefly relied upon by counsel for the appellant is, that the will fails to create a trust. The contention is, that the devise to the testator's five children vested them with the fee, and that the subsequent proviso, by which the testator attempted to reduce the estates devised to three of his children to a mere beneficial estate for life, is inoperative, because repugnant to the clause by which the devise was made. This result is sought to be reached by an application of the rule that conditions which are repugnant to the estate to which they are annexed are void. While the rule thus sought to be invoked is fully recognized, yet, as was said in discussing its application in *Friedman* v. *Steiner,* 107 Ill. 125 : "In the construction of a will we must consider all the words of the will, including all provisos and conditions, for the purpose of ascertaining what estate the

testator intended to confer by the granting words of
the will."

It is a familiar rule that in construing a will all of its
provisions are to be considered and the true intention of
the testator thus ascertained, and that such intention,
when expressed in or fairly drawn from the language of
the will, must control in its construction. This rule is
so far elementary that a citation of authorities to sup-
port or illustrate it is unnecessary. When all the words
of the will under consideration are considered together,
it is plain that the proviso was intended to limit and
modify the language of the devise, so far as it applied to
the shares of the three children named in the proviso,
and that it was the intention of the testator that the
shares of these three children should be held in trust by
the executor and be kept by him at interest, the interest
only to be paid them during their lives. The case is not
properly one of conflicting and repugnant clauses, but of
a proviso so connected with the words of devise as to
form, in legal effect, a part of the devising clause itself,
thus manifesting a clear intention that the shares of
these three beneficiaries should not go to them in fee,
but be held in trust for their benefit.

But it is insisted that even if a trust is created by
the proviso, such trust is repugnant to the rule against
perpetuities, and is therefore void. In this view we are
unable to concur. The trust is one which is in no event
to extend beyond the continuance of lives now in being.
The trust estates are to be kept loaned by the trustee,
and the interest is to be paid to the beneficiaries during
the lives of each; but it is provided that upon the death
of any of them the portion of the testator's estate willed
to him or her shall immediately descend to the child or
children of the beneficiary dying, and in case there are
no children of the party so dying, then the portion of the
decedent is to be divided equally among the surviving

children of the testator.   The fallacy in the argument of appellant's counsel lies in their assumption that, by the terms of the will, the estate which is to descend upon the death of either of these beneficiaries is merely the right to receive the interest upon the trust fund, thus extending the trust itself indefinitely.   We think it clear that the estate itself, and not the mere right to receive the interest, is to descend to the children of the beneficiary dying.   The description of the estate which is to descend is, "that portion hereby willed to each."   The sense in which this description is used, if at all ambiguous, is explained by the use of similar phraseology in the preceding parts of the will.   Thus, it is provided "that that portion of my estate hereby willed to my three children," etc., shall be held in trust, etc., and also, "said portion to be kept loaned."   It is manifest that in each of these clauses the word "portion" is used in the same sense, viz., as descriptive of the estate itself, and not of the equitable rights of the beneficiaries of the trust.   Upon the death of each beneficiary the estate from which he or she receives the interest is to descend to his or her children, or, in default of children, to the surviving children of the testator.   It follows, necessarily, that by the death of the beneficiaries the trust will be terminated and the trust estate will descend in fee.   The rule against perpetuities has therefore no application.

The will vests the executor with no express power to sell and convey the real property of his testator, and it is insisted that no such power is given by implication, and therefore that the decree is erroneous in empowering the executor to sell and convey the real estate belonging to the portions of the testator's estate willed to the three beneficiaries of the trust.   The estate of the testator consisted of both personal and real property, and by the terms of the will the portion of the estate willed to the three children named was directed to be held by

the executor in trust, and by him kept loaned at the highest rate of interest obtainable. It is manifest that the testator intended to include both his personal and real estate in the portion to be so held in trust and kept at interest. To carry out this mandate of the will both real and personal property must be converted into cash. In no other way can it be made operative. The case is one, therefore, coming within the rules applicable to the equitable conversion of lands, and the power to sell and convey is therefore necessarily implied.

This case is clearly distinguishable from *Hale* v. *Hale*, 125 Ill. 399, where we held that no implied authority to sell and convey the lands of the testator was vested in his executors and trustees by his will. There the testator, after making certain specific bequests and devises, directed that the residue and remainder of his estate, both real and personal, should be and remain in the care and control of his executors and trustees, well and safely invested, until the decease of the last of several life annuitants named in the will, when the residue, with the accumulated interest, should be divided, etc. We there held, that to sustain the doctrine of equitable conversion the provisions of the will must be so clearly written as to leave no doubt of the intention of the testator to have his real estate converted into personalty. There the mandate of the will was capable of being carried out without converting the lands into money, and the doctrine of equitable conversion therefore could not apply. But here the lands must be converted before they can be loaned at interest, and a conversion necessarily takes place.

We are of the opinion that the court below placed the proper construction upon the will, and that the decree is justified by the evidence. It will accordingly be affirmed.

*Decree affirmed.*