JESSE E. GREENMAN v. WILLIAM McVEY, and Another.[1]

June 5, 1914.

Nos. 18,664—(168).

**Will — equitable conversion of realty — interest of legatee.**
    A testator by his will devised and bequeathed to his wife his real estate

[1] Reported in 147 N. W. 812.

---

Note.—As to conversion by directing sale after devising land, see note in 39 L.R.A.(N.S.) 817. And on the question as to what time conversion takes place under direction to sell real property which postpones sale to definitely ascertainable time subsequent to testator's death, see note in 20 L.R.A.(N.S.) 65.

and personal property, and "after her death and within two years there-after" gave and bequeathed to each of his children a specific sum of money, the total bequests to such children amounting to the sum of $5,200, approximately equal to the total value of his real and personal property, which personal property was worth $800 at the time the will was made and $300 at the time the testator died. After the testator's death, and before the death of his widow, a creditor of a son of the testator obtained a judgment, levied an execution on the son's interest in the real estate and purchased such interest at the execution sale. After the death of the widow, the real estate was sold under a license of the probate court to pay debts and legacies, and this action was brought by the creditor to recover of the administrator the son's interest in the proceeds of such sale. It is *held:*

(1) Though there is no express direction in a will to sell the real estate of testator and convert it into personalty, where it appears that the testator must have contemplated that it would be necessary to sell the real estate in order to carry out the provisions of the will, the direction is implied, and there is an equitable conversion of the realty into personalty.

(2) When the sale is directed, expressly or by implication, at a specified time in the future, in this case after the death of the life tenant, the conversion takes place in equity as of the date of the testator's death. Between that time and the actual sale the legatees of the testator had no interest in the land that could be levied upon or sold on execution.

Action in the district court for Goodhue county against William McVey individually and as administrator with the will annexed of the estate of Hugh Vallely, deceased, to recover $423.29. In his answer defendant denied that James H. Vallely, son of the testator, had any interest in the land left by the testator at his decease under the will mentioned in the opinion or otherwise; denied that the pretended levy of attachment or execution by plaintiff was of any effect; alleged that defendant was the owner of the share of said James in the estate of his father by virtue of a written assignment of his title and interest in the year 1904. The case was tried before Johnson, J., who made findings and ordered that the action be dismissed on the merits. From the order denying his motion to amend the conclusions of law and order for judgment or for a new trial, plaintiff appealed. Affirmed.

*Jesse E. Greenman* and *Mohn & Mohn,* for appellant.

*Thomas H. Quinn,* for respondent.

BUNN, J.

February 12, 1901, Hugh Vallely, a resident of Goodhue county, made his will. After directing the payment of his debts and funeral expenses, the testator gave, devised and bequeathed to his wife during her natural life his real estate consisting of a tract of 160 acres, and another 10-acre tract, and his personal property. Then follows this language: "And after her death and within two years thereafter, I give and bequeath to the oldest son, Thomas M. Vallely, $100; to John O. Vallely, the second son, $100; to Peter J. Vallely, third son, $600; to Mary A. Vallely, $900; to Kate A. Vallely, $900; to Charles E. Vallely, fourth son, $600; to James H. Vallely, fifth son, $600; Ann M. Vallely, $1,200; to Frances D. Vallely, $200." The will contained no devise or bequest in terms of the remainder after the life estate of the wife.

Hugh Vallely died in June, 1905, seized of the 160-acre tract before mentioned. The will was admitted to probate September 25, 1905, and William McVey appointed administrator with the will annexed.

Plaintiff was a creditor of James H. Vallely, the fifth son of the testator, to whom, after the death of his wife, he gave and bequeathed $600. September 13, 1905, plaintiff commenced an action against James H. Vallely to recover his claim. In this action, a writ of attachment was issued and levied upon "all the right, title and interest in reversion or otherwise of the said James H. Vallely" to the 160 acres of land described in and devised by the will of Hugh. In May, 1906, judgment was entered in the action, execution was issued on the judgment, and a levy made upon the interest of the judgment debtor in the real estate. This interest, if the debtor had any interest, was thereafter sold to plaintiff at the execution sale, and a certificate of sale executed and recorded in June, 1907. No redemption was made from this sale.

Margaret Vallely, the widow of the testator, died March 10, 1910. March 31, 1910, the administrator applied to the probate court for license to sell the real estate of deceased, being the 160 acres before mentioned, for the purpose of paying the debts of deceased, and the bequests and legacies given by the will, as hereinbefore set out.

After due notice and hearing, the court licensed and directed the administrator to sell the 160 acres at private sale for the purpose of paying the debts and legacies of deceased, and thereafter this real estate was, pursuant to the license, sold for $8,000. The sale was confirmed by the court. In December, 1911, the administrator filed his final account and petition for the settlement thereof, representing that he had paid the debts of deceased, including a $1,500 mortgage on the real estate, and had in his hands for distribution under the terms of the will $6,378.62, being part of the proceeds of the sale of said real estate. The court distributed and assigned the sum of $3,670.19, the residue, to the legatees named in the will. The share of James H. Vallely was the sum of $423.49.

Plaintiff demanded of the administrator the sum so assigned to James H. Vallely. The administrator refused to pay the same to plaintiff, and this action was brought to recover it. The case was tried to the court without a jury, and the decision was that plaintiff take nothing by the action. Plaintiff moved to amend the conclusions of law so as to find that he was entitled to recover, or if that was denied, for an order granting a new trial. The motion was denied, and plaintiff appealed from the order.

The findings of fact are not challenged. In addition to the facts stated above, the court found that at the time the will was made, the real estate was worth $35 per acre, subject to a $1,500 mortgage, and that the personal property then owned by the testator was worth $800. At the time of the testator's death, the 160 acres he then owned was worth $35 per acre, or $5,600, still subject to the mortgage, and his personal property was worth $300. The aggregate amount of the bequests to his children was $5,200. These figures have a bearing upon the question of the intent of the testator in making his rather peculiar and unusual will. It is noteworthy that the amount of his bequests is far in excess of the value of his personal property at the time the will was made, as found by the trial court, and is only slightly under the total net value of all the real and personal property then owned by the testator.

Plaintiff's claim that he is entitled to recover of the administrator the amount of the bequest to James H. Vallely is based first upon

the contention that under the will, or under the statute, James H. acquired a reversionary interest in his father's real estate that could be seized and sold on execution. The will contains no residuary clause, and no express direction or power to sell the remainder after the termination of the life estate. If the testator died intestate as to this remainder, the land on the death of the life tenant would go in equal shares to his children, and James H. Vallely would have an interest in the real estate that might be seized and sold on execution against him. And if plaintiff acquired such interest by purchasing at the execution sale, he would be entitled to James H. Vallely's share in the proceeds of the sale by the administrator. Ness v. Davidson, 49 Minn. 469, 52 N. W. 46; Kolars v. Brown, 108 Minn. 60, 121 N. W. 229, 133 Am. Rep. 410.

But if there was an equitable conversion by the testator of the real estate into personalty so that the remainder must be regarded as personalty at the date of the testator's death, James H. Vallely never had an interest in the real estate described in the will, and the levy and attempted sale amounted to nothing. The case hinges therefore on the question whether there was an equitable conversion of the real estate into personal property at the date of the death of the testator.

The doctrine of equitable conversion has been applied in a multitude of cases, but not frequently in Minnesota. There is no doubt that an express direction by the testator to sell real estate and devote the proceeds to the payment of bequests or to other purposes amounts to an equitable conversion of the real estate into personalty. And where the time at which the land is directed to be sold is indefinite, it is universally held that the conversion takes place, not when the sale actually takes place, but when the will goes into effect, on the death of the testator. The decisive questions in the case at bar are these: (1) In the absence of any express direction to sell the real estate to pay the bequests, does it clearly appear that it must have been the intention of the testator that his real estate be sold, and is this equivalent to an express direction? (2) In view of the fact that the sale could only take place after the termination of the widow's life estate, is the remainder converted into personal property as of the date of the testator's death?

1. The will contains no direction to the executor to sell the real estate, and no express power to do so. It gives a life estate to the testator's wife, "and after her death and within two years thereafter," gives to each of the testator's children a specific sum of money. These bequests aggregate $5,200, a sum approximately equal to the value of the testator's entire estate, real and personal. His personal property was worth $800 at the time the will was made, and $300 at the time of his death. He had debts greatly in excess of the entire value of his personal property, and he gave this personalty to his wife. It is plainly certain that the testator must have intended that the bequests be paid out of the proceeds of a sale of the real estate, for they could be paid in no other way. It would seem clear that the intent of Hugh Vallely was that his executor should sell the real estate after the death of his widow, "and within two years thereafter," and distribute the proceeds of sale as directed. We thus have a direction to sell, not express, but implied.

Is such an implied direction equivalent to an express direction in that it works an equitable conversion? The general rule is that "In order to work a conversion while the property remains unchanged in form, there must be a clear and imperative direction to convert it. There must be an expression in some form of an absolute intention that the land shall be sold and turned into money." 9 Cyc. 831, and cases cited in note 31. This idea is expressed strongly in Anewalt's Appeal, 42 Pa. St. 414, where the court said: "To establish a conversion, the will must direct it absolutely or out and out, irrespective of all contingencies. The direction to convert must be positive and explicit, and the will, if it be by will, or the deed, if it be by contract, must decisively fix upon the land the quality of money. It must be an imperative direction to sell." But the inquiry is always as to the intention of the testator. It is not so much the words that he employs, as it is his intention as derived from the entire instrument. The whole theory of conversion rests upon the intention of the testator. That is the great guide in determining whether there has been an equitable conversion of realty into personalty. Orrick v. Boehm, 49 Md. 72. There have been many cases where there was no express direction to sell, but where

it was apparent from the general provisions of the will that the testator intended the real estate to be sold. In these cases it has been universally held that a direction would be implied, and an equitable conversion worked. 9 Cyc. 832, and cases cited. In the opinion of Chief Justice Ryan in the celebrated case of Dodge v. Williams, 46 Wis. 70, 1 N. W. 92, 50 N. W. 1103, the great jurist stated the rule thus: "When a will contains a power of sale, not mandatory in terms, but it is apparent from the general scope and tenor of the will, that the testator intended all his realty to be sold, the power of sale will be held imperative, and the doctrine of equitable conversion applied." In Harrington v. Pier, 105 Wis. 485, 82 N. W. 345, 50 L.R.A. 307, 76 Am. Rep. 924, and in Becker v. Chester, 115 Wis. 90, 91 N. W. 87, 650, the rule stated in Dodge v. Williams is added to in the way of indicating the necessary degree of certainty with which the intention of the testator should be manifested in his will, in order to make an implied direction to convert. In the Harrington case, it was said that when the provisions of the will cannot be carried out without converting the realty into personalty, and the conditions are such that the testator must have contemplated that such conversion would take place to that end, a direction would be implied. In Becker v. Chester, the court reviews its former decisions and deduces the following rule:

"When the execution of the scheme of the testator would be impossible or attended with such difficulties that it would be unreasonable to suppose that its execution would be contemplated by him, without the conversion of his real estate into personal property, a direction of such conversion will be deemed imperatively expressed in the will by necessary implication, to the same effect as if expressed in words."

In each of the three Wisconsin cases the will contained a power of sale, though not an express direction. This was the situation in most of the cases cited in the note referred to. But the direction to sell is not implied from the power, but rather from the fact that the execution of the scheme of the testator is impossible without a conversion. Giving a power of sale does not amount to a direction that there be a sale, nor does it have any bearing on the question

of the testator's intention to direct by implication a conversion of real estate into personalty. It would seem, therefore, that the absence of an express power of sale is immaterial, providing there is a clear necessity of a conversion of the realty into personalty in order to accomplish the purposes expressed in the will. And the authorities amply support this statement. 9 Cyc. 833, and cases cited in note. In many of these cases there was no express power of sale, as well as no direction in words, but in each the doctrine so well stated in the Wisconsin cases above referred to was applied, though expressed in different words. Clarke v. Clarke, 46 S. C. 230, 24 S. E. 202, 57 Am. St. 675; Chick v. Ives, 2 Neb. (Unoff.) 879, 90 N. W. 751, and Davenport v. Kirkland, 156 Ill. 169, 40 N. E. 304, are cases in which the will gave no power of sale, and others are cited in the note referred to. We have been able to discover no case in which the doctrine of equitable conversion has not been applied, where it clearly appeared from the will that the bequests of the testator would fail unless the real estate was sold. It appears beyond doubt in the case at bar that the bequests of the testator to his children could not be carried out, unless his real estate was sold to create a fund from which to pay them. Indeed, if we hold there was no implied direction to sell his real estate after the death of his wife, the testator died intestate as to such real estate, except as to the life estate devised to the widow. Plainly it was not the intention of Hugh Vallely to die intestate as to any part of his property, and a decision that he did would be to defeat his plan of distributing his estate. Such a decision is to be avoided, unless it is impossible to carry out the intention of the testator by any reasonable construction of the provisions of the will. The doctrine of equitable conversion makes it easy to distribute the property according to the testator's scheme, while without that doctrine it is impossible to do so. The will, construed as a whole, unmistakably shows the intent of the testator that his executor should, after his wife's death, sell the real estate, and pay the bequests out of the proceeds of such sale. There was therefore an equitable conversion of the realty into personalty.

2. Did this conversion take place on the death of the testator, so

that at the time of plaintiff's attempted levy and sale, James H. Vallely had no interest in land, but only a right to receive the bequest given him by will?

There is no doubt that an equitable conversion worked by a will takes place on the death of the testator, unless the conversion is expressly directed to be made at a specified time in the future, or upon the happening of a particular event. 9 Cyc. 837, and cases cited. By the great weight of authority, it is no exception to the rule that land directed to be sold and turned into money is considered as money from the death of the testator, because the period of sale is remote and the actual conversion cannot be made until the time arrives. Where the sale is directed to be made at some future time or upon the happening of a future event which is certain to happen, the general rule is still that the conversion is deemed to take place as of the date of the testator's death. Underwood v. Curtiss, 127 N. Y. 523, 28 N. E. 585; 3 Pomeroy, Equity Jurisprudence, § 1162. There are authorities, however, holding that in such case, the change does not take place until the time arrives or the event occurs. 9 Cyc. 838. Note to Beaver v. Ross, 17 Ann. Cas. 640 [140 Iowa, 154, 118 N. W. 287, 20 L.R.A.(N.S.) 65]. In this note it is stated that the great weight of authority supports the rule that where land is directed by a testator to be sold at, within, or after a definite future time, it is to be regarded as converted into personalty as of the time of the testator's death, and that all property rights must be determined as if actual conversion had taken place at that time. The mass of authorities cited to the proposition amply support the statement of the author. Beaver v. Ross is a fair example of the doctrine, and in its facts is very like the case at bar. The testator devised to his wife a life estate in his real property, and directed that after her death it and the personal property remaining be sold, the proceeds to be divided among his heirs. Before the sale took place, a judgment creditor of one of the heirs levied upon the debtor's interest in the land. It was held that there was an equitable conversion of the realty into personalty as of the date of the testator's death, and that the heir had no estate or interest in the land that was subject to the lien of the judgment. The case is well considered

and the leading authorities are cited. It is also reported in 20. L.R.A. 65, with an elaborate note in which the authorities are discussed. There is no doubt that the ruling of the case is supported by the decisions in the Federal court, and in most of the states, and we think it is the correct rule. We have not overlooked the authorities that hold to the contrary. Some take the broad ground that conversion takes place for no purpose until the time arrives at which the sale is directed, while others decline to apply the doctrine or "fiction" of equitable conversion where the rights of intervening creditors are involved. Wilson's Ex'r v. Rudd, 19 Ind. 101; Simonds v. Harris, 92 Ind. 505; Comer v. Light, 175 Ind. 367, 93 N. E. 660, 94 N. E. 325; Smith v. Hensen, 89 Kan. 792, 132 Pac. 997; Eneberg v. Carter, 98 Mo. 647, 12 S. W. 522, 14 Am. St. 664; Williams v. Lobban, 206 Mo. 399, 104 S. W. 58; Estate of Walkerly, 108 Cal. 652, 41 Pac. 992, 49 Am. St. 97; Bank of Ukiah v. Rice, 143 Cal. 265, 76 Pac. 1020, 101 Am. St. 118. These are eminently respectable authorities and support plaintiff's right to recover in the case at bar. But, as we have stated, the great weight of authority is to the effect that, when there is no discretion left in the executor as to whether a sale shall be made, and the time in the future when it is to be made is definitely fixed, or the event is certain to happen, the conversion takes place as of the date of the testator's death, and that this determines not only the rights of the legatees, but those of assignees or creditors of a legatee. There is nothing in Ness v. Davidson, 49 Minn. 469, 52 N. W. 46, or in Kolars v. Brown, 108 Minn. 60, 121 N. W. 229, 133 Am. St. 410, that is at all in conflict with this. We hold, therefore, that the conversion took place at the date of Hugh Vallely's death, and that thereafter the real estate formerly owned by him, excepting the life estate of the widow, was personal property. It follows that plaintiff's judgment was not a lien on the land, because the judgment debtor had no interest therein, and that the levy and sale on execution amounted to nothing.

Plaintiff might have reached his debtor's share of the proceeds of the sale by garnishment, attachment, or execution properly levied, but he did not avail himself of these remedies. Clearly he is not

entitled to maintain this action against the administrator without showing that he is the owner of the fund, or that he possesses a right to it superior to the right of defendant.

Order affirmed.