The People of the State of Illinois, by Otto Kerner, Attorney General, Appellee, v. The Canton National Bank of Canton et al., Appellants.

Gen. No. 9,006.

Opinion filed January 15, 1937.

GLENN RATCLIFF, of Lewistown, for appellants.

OTTO KERNER, Attorney General, for appellee   The People of the State of Illinois.

SEARS & SOLFISBURG, of Aurora, for other appellees.

MR. PRESIDING JUSTICE FULTON delivered the opinion of the court.

This is a complaint, filed in equity by the People of the State of Illinois, against the Canton National Bank of Canton, Illinois, et al., for an accounting from said bank as trustee of a trust created by the last will and testament of Van B. Eyerly, deceased, and for the appointment of a successor in trust. The controversy arises over the provisions of the will of Van B. Eyerly, who died September 27, 1926, and his will was probated in the county court of Fulton county on November 15, 1926. The portions of the will under consideration in this case are the fifth, sixth and seventh clauses, which read as follows:

"Fifth: It is my Will and I do hereby direct that all of the rest, residue and remainder of my estate, both Real and Personal or Mixed, and of whatsoever kind or nature and wheresoever same may be found or located, shall be held IN TRUST by my TRUSTEE, hereinafter named, and loaned and invested in first mortgage loans, bonds and safe securities and investments, at highest rate of interest consistent with entire safety to the principal, and the full NET INCOME therefrom shall be paid unto my wife, Charlotte Solfisburg Eyerly, for and during her natural lifetime, and I hereby direct that the said income shall be paid unto her at such convenient time as she may elect, either monthly, quarterly or semi-annually, but not less frequently than the annual income each year.

"Sixth: After the decease of my said wife, Charlotte Solfisburg Eyerly, it is my Will and I do hereby direct my said TRUSTEE to pay over all of the net income from my residue estate unto a Board of Three Commissioners, one of whom shall be The President of the Board of Education and one shall be the

Superintendent of the Public Schools of the City of Canton, Illinois, and the third member shall be the President or Manager of the Trust Department of the Canton National Bank of Canton, Illinois, and my residue estate thus held in trust shall be known and entitled as The Mr. and Mrs. Van B. Eyerly, Educational Fund, and the full net income therefrom shall be used and expended by the said Three Commissioners in the higher education at some accredited College in the United States, of the eligible graduates of The Canton High School of Canton, Illinois under such rules and regulational of examination for eligibility as may be devised, established and adopted by said Board of Commissioners, and the amount of income to be paid and allotted to each separate scholarship shall not be less than Eight Hundred Dollars ($800.00) for each year of the Four (4) years of each of said Scholarships.

"Seventh: I hereby nominate and appoint The Canton National Bank Trust Department, of Canton, Illinois, to be the Executor and Trustee of this, my Last Will and Testament."

Because of the public interest in the charitable features of this trust, the attorney general filed this suit.

The complaint alleged that the Canton National Bank qualified as executor and administered upon the estate, filing its final report as such executor in the county court. The report was duly approved on March 20, 1928. The bank procured an order of said court directing the bank as such executor to pay over to the bank as trustee under said will all of the remaining assets belonging to said estate, which consisted of bonds, stocks, contract for sale of real estate, savings account and cash in the Canton National Bank, of the total aggregate face value of $96,675.49.

The complaint further alleged that the Canton National Bank continued to act as trustee until the fourth

day of March, 1933, on which date it was closed by presidential order, and has ceased to transact business as a banking institution; that the entire corpus of said estate, including any undistributed income, is in the possession of M. D. Lawlor, receiver of said bank; and that the said bank has ceased to function as trustee. The complaint also alleged that no reports had been rendered by the bank, as such trustee, and that it was its duty to present a report to the circuit court; that the accounts of said bank, with reference to said trust estate, should be settled and a new trustee appointed by the court.

Charlotte Solfisburg Eyerly, widow of Van B. Eyerly, the beneficiaries of the charitable trust, the receiver of the bank, the Canton National Bank and the trust department of said bank were made parties defendant to the complaint. The complaint asked for the following relief: That the receiver of the Canton National Bank be ordered to file a complete final settlement and accounting of said trust; that a successor trustee be appointed by the court; that the receiver be decreed to convey, transfer and assign all of the said trust estate to the successor in trust; that upon the approval of the account of said trustee the income accrued be directed to be paid to the parties entitled thereto under said will. The complaint also asked for general relief. An answer to the complaint was filed by the receiver and by the bank. A separate answer was filed by all of the beneficiaries under the charitable trust admitting the allegations of the complaint and that the appellee was entitled to the relief therein prayed. A similar answer was filed by Charlotte Solfisburg Eyerly.

M. D. Lawlor died before the trial of the case and Robert W. Albright, who was appointed receiver of the bank to succeed him, was substituted as a party defendant. An amended answer was filed by the Canton National Bank and by the receiver. This amended

answer admitted the allegations of the complaint with reference to the death of Van B. Eyerly, the probating of the will and the contents thereof, the qualification of the Canton National Bank as said executor, the fact that the securities and moneys described in the complaint were delivered to the bank, as trustee under said will, and that said bank continued to act as such trustee until the fourth day of March, 1933, when it ceased to do business. The amended answer further admitted being in possession of the corpus of said trust and averred a willingness to file a full and complete report of the acts and doings of said bank as such trustee. Another amendment was filed to this amended answer showing that the comptroller of the currency of the United States of America made an assessment upon all stockholders of the Canton National Bank for the par value of each share of stock and that by virtue of said assessment the trust estate of Van B. Eyerly, deceased, became liable to pay to the receiver of said bank the sum of $12,000 on account of 120 shares of the capital stock which belonged to and were a part of said trust estate. The amendment further averred that the sum of $12,000 has been charged against said trust estate on account of said assessment and asked that the said receiver be authorized to sell sufficient securities belonging to said trust estate to pay the amount of said assessment. The amendment further averred that the bank was entitled to receive reasonable compensation for its services as trustee and a reasonable sum for the services of its attorneys in connection with the administration of said trust estate. This amended answer, together with the amendment thereto, was filed as a counterclaim in said cause and relief asked in compliance with the suggestions above enumerated.

A report of the income received from the trust estate was attached to said amended answer. This showed that the income received by said trustee amounted to

$3,029.95 in 1928; $4,344.44 in 1929; $4,560.66 in 1930; $3,470 in 1931; $2,560.97 in 1932; and $1,939.12 in 1933. The dividends on the stock in the Canton National Bank, which were included in said income, amounted to $1,080 in 1928; $1,440 in 1929; $1,440 in 1930 and $720 in 1931. No dividends were reported for 1932 or 1933. The report also showed that the bank reserved for paying fees, covering its services as trustee, the sum of $1,000 and to pay attorneys' fees $500. Among the securities listed on hand in the report were 120 shares of the capital stock of the Canton National Bank of the book value of $36,000.

Objections were filed to this report by the appellee alleging that the trustee was not entitled to compensation for its services or for that of its attorneys, because it had so negligently handled the trust estate; denied that the trust estate was liable for the stock assessment levied by the comptroller of the currency, but averred that in the event the court should find said trust estate liable for said stock assessment, then the Canton National Bank, as such trustee, was liable to said trust estate for the amount of said assessment because of its failure to sell the bank stock. The objections further alleged that said bank stock was appraised in inheritance tax proceedings of said estate at the sum of $36,000 and that said stock was reasonably worth that amount for a period of more than two years after the bank received said stock as trustee; that said bank was qualified to do a trust business and had deposited with the auditor of public accounts $50,000 in bonds which are still in the hands of said auditor for the benefit of the trust creditors of said bank and that appellee was entitled to have its claim along with all other trust claims satisfied out of the proceeds of said bonds. Edward J. Barrett, auditor of public accounts, was made a party defendant, by amendment, and answered said complaint and objections. The bank and the receiver

thereof replied to the objections denying liability for negligence and wrongful management of said trust. Charlotte Solfisburg Eyerly, and the representatives of the charitable trust, joined in the objections filed by the appellee.

There was no serious conflict about the facts in this case. The principal question upon which evidence was presented pertained to the value of the bank stock during the period of time that it was held by said bank as trustee. There was also testimony relating to the question of the advisability of selling said stock. The facts show that the capital stock of the Canton National Bank amounted to the sum of $125,000; that stock in said bank was purchased at $275 a share in July, 1929, and that the average sale price from 1913 to 1929 was $283 a share (this value prevailed up to a short time before the bank closed although there was no demand for the stock the last year or two the bank was operating); that Charlotte Solfisburg Eyerly, the widow of Van B. Eyerly, at various times during the year in which the estate was being administered requested the bank to sell this stock; that on May 5, 1928, she received an offer from one U. G. Orendorff to buy said stock and that he was willing to pay the sum of $275 a share; that Mrs. Eyerly informed the bank that Mr. Orendorff desired to buy said stock. Mrs. Eyerly had told the president of the bank a number of times during that year that she thought the bank stock should be sold and that her brother-in-law had advised her said bank stock should not be held in the estate. The evidence also shows that U. G. Orendorff owned 100 shares of the stock at the time the bank was closed and that 90 shares of his stock were purchased between 1921 and 1929; that about the time he offered to buy the Eyerly stock he offered not less than $265 a share for 50 shares of stock held by the Piatt estate. One of the attorneys, who represented the bank as executor of

this estate and solicitor of the trustee, testified that he advised the officers of the trust department on several occasions in reference to taking the bank stock as a part of the trust estate and told them the stock should not be carried as a part of the trust funds. The testimony further shows that the bank paid dividends on this stock from the date of its receiving the same as trustee in 1928 until in July, 1931, and no dividends were paid after July 1, 1931. The dividend rate had been $12 per share annually up until April 1, 1931. On that date a quarterly dividend of $1.50 per share was paid and a letter was sent to each of the stockholders explaining its reasons for reducing the dividend to $6 per share annually. Witnesses were produced on behalf of the appellants who testified that during the period of time from March 14, 1928, down to the time of the closing of the bank, the stock of the Canton National Bank was reputed among men of business, experienced in that community, to be a safe and substantial investment; that during that period of time there was a reasonably ready sale of this stock at about its book value. The book value fluctuated from approximately $224 a share in February, 1928, down to $142 a share on December 31, 1932.

The trial court held that it was the duty of the Canton National Bank, as trustee, to have sold the 120 shares of stock received by it as a part of the trust estate; that by electing to take from itself stock in its own bank as a part of the trust estate it might have an interest in this bank stock which was personal to it and might be in direct conflict with the interest of the trust; that the bank should be chargeable with the loss sustained to the trust fund by reason of the violation of its trust in negligently failing to dispose of said stock; that the stock was worth $275 a share and on May 5, 1928, it had an opportunity to sell said stock at that price; that it should be chargeable with interest at five

per cent per annum from May 5, 1928, to the date of the decree, less any moneys that might have been paid to the life beneficiary as dividends on such stock. The court further held that the Canton National Bank should reimburse the trust for the amount of the assessment levied by the comptroller of the currency on this stock.

The decree named the Old Second National Bank of Aurora as successor trustee and ordered the receiver of the bank to transfer all the assets of the trust estate to the successor trustee. It further provided that the Old Second National Bank of Aurora pay the sum of $12,000, together with interest thereon, on account of the stock assessment levied by the comptroller of the currency. It further decreed that the Canton National Bank was indebted to the Old Second National Bank of Aurora for the amount of said stock assessment; also, that the Canton National Bank was indebted to said trust estate for the sum of $33,000, being the value of said bank stock on May 5, 1928, together with interest at five per cent from that date, less the sum paid to the life beneficiary in dividends. Decree also provided that the securities held by the auditor of public accounts was subject to the lien of the new trustee for the said indebtedness and in the event said securities should not be sufficient to pay in full all of the trust creditors of said bank, then the new trustee and Charlotte Solfisburg Eyerly should be entitled to a general claim for the deficiency against the receiver of said bank. The question of the compensation for the trustee and attorney's fees was reserved for the further consideration of the court.

The appellants contend that the record in this case discloses that the Canton National Bank has not been guilty of any breach of trust in administering the trust created by the last will and testament of Van B. Eyerly, deceased; that the language of the will and the provi-

sions of the statutes of Illinois in force at the time the will was executed authorized the trustee to continue to hold the 120 shares of bank stock as a part of the corpus of said trust estate; that the only personal interest which the bank had in this stock was the ordinary interest between a corporation and its stockholders; that the trustee acted with reasonable diligence and prudence and in accordance with the judgment of men of experience in making investments and had not been guilty of any negligence in the administration of the trust.

The provisions of the will creating the trust was to the effect that the residue of the estate, both real and personal, should be held in trust by the trustee, and loaned and invested in first mortgage loans, bonds and safe securities and investments, at highest rate of interest consistent with entire safety to the principal. The appellants urge that because of the provisions of "An Act concerning powers of trustees," Ill. State Bar Stats. 1935, ch. 3, ¶ 144; Jones Ill. Stats. Ann. 135.05, adopted in 1905, providing for the character of investments which may be made by trustees and which concludes with the following language, "any trustee or any and all successors in trust may continue to hold any investment received by him under the trust, or any increase thereof," that the bank was expressly authorized to continue to hold the stock which it received as a part of the trust estate. In support of their argument they rely chiefly upon the case of *Merchants Loan & Trust Co. v. Northern Trust Co.*, 250 Ill. 86. In that case, however, it was clear that the testator intended to give his trustees uncontrolled discretion in the management of the estate, with full power to invest and reinvest the same and to vary the securities and property. He invested them with broad discretionary powers. The opinion also said, "the law does not give Trustees the same freedom of choice in investments

that may be exercised by prudent business men in their own affairs. . . . The trustees must always and ever, in exercising their powers, act in the utmost good faith and with sound judgment and prudence.'' There is nothing in that case that gives trustees an unlimited power to hold any investments received by them under a trust. In the case of *Davenport v. Kirkland,* 156 Ill. 169, where the court construed a will containing somewhat similar language to the fifth clause of the Eyerly will, the court said:

''It is manifest that the testator intended to include both his personal and real estate in the portion to be so held in trust and kept at interest. To carry out this mandate of the Will both real and personal property must be converted into cash. In no other way can it be made operative.''

In our judgment the statute above referred to does not give trustees the power and authority to hold stock received with the trust estate for any particular length of time but only for such period as the facts and circumstances of each particular case may warrant. It is doubtful whether the bank stock in controversy in this case is included as one of the securities the testator directed the trustee to carry as a permanent investment.

A large part of appellants' argument is devoted to the proposition that the bank had no personal interest in the stock adverse to the interest of the trust and could not be charged with the loss of the bank stock on the theory of divided loyalty. It may be conceded that the primary responsibility of the bank was to protect the trust committed to its charge. No self interest can be allowed to conflict with this obligation. It could not derive any personal advantage at the expense of the trust nor put itself in a position antagonistic to the beneficiaries of the trust. In *Bennett v. Weber,* 323 Ill. 283, the court said: ''A trustee is not permitted to

place himself in a position where it will be difficult for him to be honest and faithful to his trust." See also *Joliet Trust & Savings Bank v. Ingalls*, 276 Ill. App. 445; *Thorp v. McCullum*, 1 Gilm. 614. In this case Mrs. Eyerly advised the bank shortly after her husband's death that this stock should be sold. She talked to the trustee at various times and finally in May, 1928, found a purchaser for the stock. These suggestions were apparently entirely ignored by the bank for there is no proof of its ever making any effort to dispose of the bank stock. The trustee was in better position than anyone else to know what was happening to effect the value of this stock. They certainly knew that in case the bank should be closed that the estate would be subject to the superadded stock liability of $100 per share and still in the face of the request by the life beneficiary for the sale of the stock, the provisions of the will of Van B. Eyerly, deceased, and the advice of their attorney and solicitor they continued to hold this stock as a part of the trust. In thus holding this stock it can easily be seen why the trustee placed itself in a position where it would be difficult for it to be honest and faithful to its trust. With the depression coming on the bank would not care to offer such a large block of stock for sale for fear that the interests of the bank would be seriously affected. It is our judgment that the trustee so conducted the affairs of this trust that it could not give the utmost fidelity to this particular asset without coming in conflict with the personal interests of the bank. We believe the trial court was correct in holding that the trustee violated one of the duties imposed upon it when it failed to dispose of the bank stock at the time when there was an opportunity to sell at $275 a share and that the trustee should be charged with that valuation.

It is the further contention of the appellant that even though the Canton National Bank was held liable for

loss to the estate on account of its failure to sell the bank stock, the life beneficiary Charlotte Solfisburg Eyerly was not entitled to a decree for interest and that it was reversible error for the court to award interest to her in the final decree. The basis for this assumption is that there is no proper pleading filed on behalf of the life beneficiary as the foundation of such decree; that affirmative relief cannot be granted to a defendant unless a cross-bill is filed or a counterclaim should be a part of the answer and should be designated as a counterclaim. In this case Charlotte Solfisburg Eyerly filed objections to the report of the Canton National Bank in which there was a prayer asking that the court take an accounting and ascertain the damages sustained by the said estate. It is well established in this State that where there had been a bill for an accounting, the trustee must account to every person for any amount that is due to the parties interested. *Seybert v. Hoiles,* 279 Ill. App. 110. For a further reason the appellants say that Mrs. Eyerly, with full knowledge of the alleged illegality of the investment in bank stock, accepted the dividends from the stock and that this amounted to a ratification of the investment. We do not think the facts warrant this presumption. Mrs. Eyerly sought in every way possible to induce the trustee to sell the stock and approached them on this subject on several different occasions. She even produced a buyer who was ready, able and willing to purchase the stock at an adequate price. There was no acquiescence, either express or implied, on the part of this beneficiary on the question of holding the bank stock as a part of the assets of the trust estate.

It is further the position of the appellants that where a statute or constitution establishes a liability in favor of the creditors of a bank, the proper construction of such provision is that it shall be for the benefit of all creditors and that they should share pro

rata in the amount recovered; therefore, that the securities deposited by the Canton National Bank with the auditor of public accounts in order to qualify as a corporation, authorized to execute trusts, are held by the auditor for the benefit of all creditors of said bank and not merely for the benefit of trust creditors. The Appellate Court in the Second District in this State in the case of *In re National Bank of Ottawa*, 273 Ill. App. 545, had occasion to consider this exact question and held:

"The object and purpose of the Trust Company Act, as suggested by counsel for defendants in error, is to afford trust creditors a measure of protection at least that is not afforded general creditors of the bank. The creditors protected by the securities in the hands of the auditor are those whose claims arise because the bank accepted an appointment which it was authorized to accept by virtue of this act. The right to resort to these securities depends upon whether the bank was in possession of and liable for trust funds by virtue of an appointment it was authorized to accept under the act regulating trust companies."

In our judgment the trial court correctly held that the amount of the decree should be satisfied out of the trust funds of the bank along with other trust claimants.

On the whole we are in accord with the findings of the trial court as expressed in its decree and the same is hereby affirmed.

*Affirmed.*